THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. KENNETH JOHNSON, Appellant.— Judgment of the Supreme Court, Kings County, rendered July 11, 1973, affirmed. Appellant stands convicted of the brutal murder of a woman shopkeeper and the attempted murder of her daughter. One of his claims on appeal is that his absence from major portions of his trial denied him his constitutional and statutory rights. The background facts are as follows: Appellant was not apprehended until almost a year after the commission of the crime and the trial was delayed for another two years by numerous separate proceedings, including three competency hearings (after each of which appellant was found competent to proceed), repeated changes of assigned counsel and various unsuccessful efforts by appellant to retain a private attorney. When the trial finally began and just after the completion of jury selection, appellant disrupted the courtroom by yelling out and overturning the counsel table. The trial court warned appellant that it would not tolerate such conduct and would consider binding and gagging him or putting him out of the courtroom altogether if he did not behave. Appellant refused to promise good behavior in the future and, when the court called for the return of the jury, indicated that he did not want to stay in the courtroom or have the trial proceed in his absence. The court then informed him of his right to be present and to see and hear the witnesses against him. Appellant claimed that he could not understand and that his head was "spinning". Although the court opined that he was trying to stall the trial, it nevertheless adjourned the trial to the next morning. That next morning, after a courtroom visit with his mother and denial of his requests for an adjournment to raise money for a private attorney or to prepare to defend the case himself, appellant indicated to the court that he did not want to stay in the courtroom. Advised of all the alternatives, appellant informed his assigned counsel, on the record, that the latter could proceed without him, whereupon appellant was escorted out of the courtroom. Appellant was then absent from the trial during opening statements and the testimony of the medical examiner and the first police officer to arrive at the scene of the crime after the murder. He was returned, pursuant to the court's direction, for the identification testimony of one Phyllis Laffer and promptly fell to the floor in an ostensible fit. He apparently remained on the floor during all of the witness's direct examination and was then taken out, assigned counsel commenting that he did not believe that appellant wanted to stay. During a recess in this witness's cross-examination, counsel conferred with appellant as to the testimony to date. In addition, appellant returned to the courtroom to speak with his mother but, when he discovered that she had left, he asked and received permission to absent himself again. When this witness's cross-examination was completed, appellant was once more returned to the courtroom for the identification testimony of Gertrude Laffer, the victim of the attempted murder. He apparently sat quietly during her entire testimony and, the next morning, informed the court that he wished to remain in the courtroom and would behave himself. He did so remain and the trial proceeded without further incident. After the rendition of the verdict, appellant told the court that he had "created a lot of things that I shouldn't" because he did not think he would get a fair trial. The rule is well settled that a defendant charged with a felony not punishable by death may waive his Sixth Amendment right to be present at every stage of the trial and to confront the witnesses against him (*Snyder* v. *Massachusetts*, 291 U. S. 97, 105–106; *Diaz* v. *United States*, 223 U. S. 442; *United States* v. *Taylor*, 478 F. 2d 689, affd. 414 U. S. 17; *United States* v. *Tortora*, 464 F. 2d 1202, cert. den. *sub nom. Santoro* v. *United States*, 409 U. S. 1063; *People ex rel. Lupo* v. *Fay*, 13 N Y

2d 253, cert. den. 376 U. S. 958; *People* v. *Winship,* 309 N. Y. 311; *People* v. *La Barbera,* 274 N. Y. 339). On the facts at bar, a knowing and voluntary waiver was clearly made, for appellant was fully advised of his rights and the fact that the trial could proceed without him, before he informed assigned counsel and the court, on the record, that he did not wish to remain in the courtroom and that the trial could proceed in his absence (cf. *Illinois* v. *Allen,* 397 U. S. 337 [now codified in CPL 260.20], where the defendant was forcibly removed from the courtroom after insisting upon his "right" to be present at the trial and, at the same time, to disrupt it; *United States* v. *Crutcher,* 405 F. 2d 239, cert. den. 394 U. S. 908, where the trial court had failed to advise the defendant of his rights and get an effective waiver on the record; *People* v. *Anderson,* 16 N Y 2d 282, where the unexplained absence of a defendant in custody from a suppression hearing mandated a reversal of his conviction). Indeed, it is apparent on this record that appellant's actions at the trial were a ploy conceived either to delay the trial or obtain a mistrial. Such disingenuous behavior was never intended to be protected under the Sixth Amendment. We have examined appellant's other assignments of error and find no warrant for a reversal of his conviction. As respects his claim of ineffective assistance of counsel, we merely note that although appellant apparently refused to discuss his case with assigned counsel before trial, the latter had fully prepared himself by reading the *Wade* hearing minutes, conferring at length with his predecessor, who had represented appellant for almost a year prior thereto, and reviewing this attorney's files. Furthermore, it is undisputed that appellant's trial conduct placed his counsel in an extremely difficult position. Perhaps fearing that the jury might conclude appellant was a real "psycho" who needed to be put away in any event, counsel pursued a course of complete frankness with both the jury and the court and, in summation, attempted to minimize any prejudice accruing from his bizarre behavior by implying that appellant was simply acting out of his fears and frustrations with respect to securing a fair trial in the only way he knew. We cannot condemn counsel's approach on these facts or fault him for not specifically denying that appellant's "fit" may have been self-induced, as opposed to medically caused. Gulotta, P. J., Hopkins, Martuscello and Christ, JJ., concur; Shapiro, J. dissents and votes to reverse the judgment of conviction and order a new trial, with the following memorandum: My brethren, in the majority, and I read the record in this case differently. They find that the defendant knowingly waived his right to be present at the trial. I find no such knowing waiver. They find that he was adequately represented by counsel. I find that he was grossly misrepresented. The defendant went to trial on March 12, 1973 represented, against his will, by assigned counsel after efforts to retain an attorney proved unsuccessful. Assigned counsel informed the court that he had conferred with the defendant and had read the hearing minutes and was ready for trial although he later asserted that the defendant had refused to talk to him about the case. His conduct of the defense demonstrated his complete lack of familiarity with the testimony adduced at prior hearings. When the jury selection process was completed and just before the jury left the courtroom, the defendant screamed, "What about me?" and overturned the counsel table. The court warned the defendant he would either be bound, gagged and handcuffed, or put out of the courtroom. The defendant informed the court that he could give no assurances that such conduct would not continue as he had no confidence in his lawyer and had not spoken to him about the case until that day. Defense counsel then stated not that he was familiar with the case but that he was "as prepared as I will ever be. It is true the defendant never told me anything about. He

would not speak to me." Instead of asking to be relieved because of his patent unfamiliarity with the facts of the case he merely informed the court that he did not know whether the defendant's attempts to retain a lawyer were "a proscrastination or a lie".* The defendant stated that he did not wish to remain in the courtroom, but also stated that he did not want the trial to continue in his absence. The court thereupon advised him of his rights to hear the testimony, cross-examine witnesses and confer with counsel. When the defendant replied that he did not understand because his head was "spinning", the court adjourned the case to the following morning notwithstanding its indication of disbelief with regard to defendant's condition. The following morning, unsuccessful efforts were made by the defendant's mother to retain counsel for her son. The defendant again expressed dissatisfaction with his lawyer, but his application for an adjournment to prepare his own defense was denied. When the defendant was asked whether he would behave himself, he expressed surprise upon being told that he had broken a table the previous day. The defendant then said that he thought he should leave the courtroom because he did not want to be disruptive and couldn't think at that time. He was allowed to leave but no mechanical or other arrangements were made for him to hear the testimony of the witnesses. When the jury was brought in it was advised by the court that the defendant was absent *at his own request* thus indicating to the jury, at the very least, that defendant was disinterested in the outcome of the trial. No cautionary instructions were requested by assigned counsel or given by the court. The defendant was absent during the testimony of the first three prosecution witnesses. He was brought back to the courtroom prior to the testimony of the first "identification" witness. When asked whether he would behave himself, the defendant replied that he did not accept the representation of counsel and that he had a splitting headache. He requested permission to leave. He was advised that he could go after the identification was made. During the course of the witness' testimony, *and in the presence of the jury,* defense counsel said, "I think the record should indicate that the defendant has, *either for one reason or another,* taken a fit in the courtroom. I can't tell. He was sitting here and then went into a *self-induced* or medical fit. I don't know. I can observe for the record that he is conscious, but doesn't seem to be responding as a normal person." (Emphasis supplied.) In effect defendant's so-called lawyer was telling the court *and the jury* that his client was a malingerer. The court then said, "The Court will note on the record that the defendant was sitting here, that he did not slump, that he *deliberately,* to my mind, through [sic] himself to the floor. Put the coat back so that his face can be seen." (Emphasis supplied.) The court reinforced the malingerer status of the defendant before the jury. After such a performance could the jury be expected to look favorably upon the defendant? The defendant apparently remained on the floor during the balance of the witness' direct testimony. When she concluded, the court asked defense counsel whether he wanted his client to remain in the courtroom. Defense counsel replied, "I don't think it is necessary, your Honor. He appears to be comfortable, *but I don't think he wants to stay." Without being asked whether he wished to remain* the defendant was thereupon removed from the courtroom at the court's direction. The defendant was later brought back to the courtroom for the testimony of the next witness, who also identified him. He apparently remained without untoward

---

* This was but the first of several instances in which defense counsel demonstrated his desire to act as a friend of the court rather than as an advocate for his client.

incident throughout her testimony and for the balance of the trial. I do not quarrel with the majority's view that a defendant can waive his right to be present during the course of his trial. However, the right to be present and to confront one's accusers is a valuable one assured to every defendant in a felony prosecution by the Sixth and Fourteenth Amendments to the Constitution of the United States (*Snyder* v. *Massachusetts,* 291 U. S. 97, 106). The waiver of such a fundamental right must be shown to have been both knowing and voluntary (cf. *Johnson* v. *Zerbst,* 304 U. S. 458; *People* v. *La Barbera,* 274 N. Y. 339, 344). It may not rest on an inference. The record in this murder prosecution clearly does not reveal such a knowing waiver. On the first occasion upon which defendant, somewhat ambiguously, asserted his desire to leave the courtroom he was advised of his rights and the importance of his presence. However, the defendant indicated that he had not understood what had been told him because his head was " spinning " and the trial was adjourned to the next day. *The defendant was never again advised of the desirability 'of his presence or the adverse consequences of his absence notwithstanding 'the statutory mandate that a defendant must be present during the trial of an indictment* (see CPL 260.20). *Further, although the defendant repeatedly stated that he wished to leave as a protest against his representation by assigned counsel, he was never advised that he could preserve that objection for review without the need for absenting himself.* Indeed, as noted, on one occasion the defendant was removed from the courtroom solely upon the acquiescence of his attorney, who apparently made no effort to confer with or advise his client of his rights. It cannot be argued that the defendant was removed because of his disruptive conduct as he only engaged in such conduct on one occasion (see CPL 260.20). Indeed, the District Attorney on the argument of this appeal, and in answer to a question from me, said that he was not relying upon defendant's conduct to justify his removal from the courtroom, but solely upon the defendant's expression of his desire not to be present. Accordingly, I find that there has been no showing of a voluntary and intelligent waiver by the defendant of his right to be present during the trial. I am further of the view that a new trial is required, in the interests of justice, because of the gross inadequacy of defense counsel. As noted by the Court of Appeals, " at the very least, the right of a defendant to be represented by an attorney means more than just having a person with a law degree nominally represent him upon a trial and ask questions. Moreover, and this is well settled, the defendant's right to representation does entitle him to have counsel ' conduct appropriate investigations, both factual and legal, to determine if matters of defense can be developed and to allow himself time for reflection and preparation for trial ' " (*People* v. *Bennett,* 29 N Y 2d 462, 466). A review of the record clearly demonstrates that the defendant was denied the effective assistance of counsel. For example: (1) although the court regarded the assignment as " conditional " until the day this murder trial began, defense counsel did not seek an adjournment or move to be relieved of the assignment even though he had been unable to discuss the case with the defendant; (2) defense counsel stated *in the presence of the jury* that the defendant's fit might have been self-induced; (3) at one point in the trial, defense counsel made the decision that his client should be removed from the courtroom, although he apparently did not confer with his client about the waiver of such a fundamental right; (4) defense counsel did not seek cautionary instructions with regard to his client's absence; (5) defense counsel's comments during trial often indicated disbelief in the genuineness of his client's actions; (6) defense counsel, during his cross-examination of a police officer, bolstered the identifications previously made of the defendant

although such testimony could not properly have been offered by the People (see *People* v. *Sarmiento,* 40 A D 2d 562); (7) defense counsel's cross-examination of prosecution witnesses demonstrated his lack of familiarity with their testimony at pretrial hearings; and (8) defense counsel failed to proceed diligently to locate a known alibi witness and did not seek to enlist the assistance of the court through a request for assignment of an investigator, or otherwise, to help locate the witness. The observations recently made by Judge GABRIELLI, writing for a unanimous court in another murder case, *People* v. *LaBree* (34 N Y 2d 257, 260), aptly applies here. He there said: "We do not imply that errorless counsel is required by the Sixth Amendment but, minimally, the assistance of counsel must in fact be susceptible of being deemed of an assistive nature (cf. *Brubaker* v. *Dickson, supra,* at p. 37; *People* v. *McDowell,* 69 Cal. 2d 737). Here it was not." I would reverse the judgment of conviction and order a new trial on the ground that defendant did not knowingly waive his right to be present at trial and was not afforded the effective assistance of counsel.

