UNITED STATES of America, Appellee,

v.

Paul MacDONALD et al., Appellants.

Nos. 71-1153, 71-1154, 71-1225.

United States Court of Appeals, First Circuit.

Heard Dec. 6, 1971.

Decided Feb. 16, 1972.

Certiorari Denied May 30, 1972.
See 92 S.Ct. 2070, 2073.

William P. Homans, Jr., Boston, Mass., with whom Featherston, Homans & Klubock and Thomas G. Shapiro, Boston, Mass., were on brief, for Paul MacDonald, appellant.

Ira L. Schreiber, Providence, R. I., for Michael F. Kelley, appellant.

Harvey A. Silverglate, Boston, Mass., with whom Zalkind & Silverglate, Boston, Mass., was on brief, for Lance H. Trott, appellant.

Paul F. Ware, Jr., Asst. U. S. Atty., with whom James N. Gabriel, U. S. Atty., was on brief, for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

COFFIN, Circuit Judge.

This is a consolidated appeal involving three defendants, MacDonald, Kelley and Trott, who were convicted in a jury trial of violating and conspiring to violate 26 U.S.C. § 4705(a) by dealing in cocaine not in pursuance of a written order form issued for that purpose.[1] MacDonald and Kelley were sentenced on both the substantive and conspiracy counts to ten years imprisonment, to be served concurrently; Trott was sentenced to five years imprisonment.[2]

From the evidence produced at trial, it appears that the initial contact in contemplation of a sale of cocaine was made by defendant MacDonald with a fellow student who worked as a paid informer for the Bureau of Narcotics. Preliminary arrangements were completed at subsequent meetings between MacDonald, the student, her "money man" and a "friend" to sell the student a half-pound of cocaine for $6,000. Shortly thereafter, MacDonald, who had been joined at this point by his "partner, Lance [Trott]", accompanied the student and the two undercover narcotics agents to a Cambridge store owned by defendant Kelley. Kelley, who had been introduced as MacDonald's "source," gave a small amount of a white powdery substance to the student for testing. As soon as the substance was verified as cocaine, all three defendants were arrested.

Defendants Trott and MacDonald complain first of the district court's refusal to instruct the jury that they should return not guilty verdicts if they found that Trott and MacDonald were mere agents of the buyers. While we have recognized that status as a buyer's agent can occasionally be a defense to a charge brought under 26 U.S.C. § 4705(a), see United States v. Barcella, 432 F.2d 570 (1st Cir. 1970), the cir-

---

1. Repealed. Pub.L. 91–513, Title III, § 1101(b) (3) (A), Oct. 27, 1970, 84 Stat. 1292.

2. Sentences were imposed on both the substantive and conspiracy counts under 26 U.S.C. § 7237(b). Repealed. Pub.L. 91–513, Title III, § 1101(b) (4) (A), Oct. 27, 1970, 84 Stat. 1292.

cumstances justifying a "buyer's agent" charge are extremely rare. Before such a charge is given, there must be some evidence that the defendant's involvement was confined solely to acting as the agent of the recipient, physically handling drugs whose ownership had already passed to such recipient and hence not personally engaging in the sale, barter, exchange or gift proscribed by § 4705(a). *Id.* at 571–72. Since there was not a scintilla of evidence here that would have justified a jury finding that Trott and MacDonald were mere buyers' agents, the court was duty-bound to refuse to give the instruction. *See* United States v. Platt, 435 F.2d 789, 792 (2d Cir. 1970); United States v. Vole, 435 F.2d 774, 776–778 (7th Cir. 1970); United States v. Leach, 427 F.2d 1107, 1112 (1st Cir.), cert. denied, Tremont v. United States, 400 U.S. 829, 91 S.Ct. 57, 27 L.Ed.2d 59 (1970).

■ All three of the defendants attempt to draw sustenance from our opinion in United States v. Flannery, 451 F. 2d 880 (1st Cir. 1971), for their contention that the prosecutor impermissibly commented on MacDonald's failure to take the stand in a manner prejudicial to them all. In his closing remarks, the prosecutor characterized MacDonald's position as follows:

> "[MacDonald] is saying, I was entrapped. He is saying, I was innocent and by the womanly guile of this young lady that took the stand in front of you, this otherwise innocent individual [MacDonald] *who testified he had previously—excuse me, who did not testify,* but of whom there was testimony he was previously involved in drugs and was in fact a drug counselor at the time he was so willing to sell this cocaine . . .." (portion objected to in italics)

Although *Flannery's* prophylactic rule is prospective, this court has long been sensitive to the possible prejudice to defendants that may accompany prosecutorial comment on what is both a constitutionally and statutorily-protected right to remain silent.[3] *See, e. g.,* Desmond v. United States, 345 F.2d 225 (1st Cir. 1965). But we do not regard this as an instance calling even for censure—much less for reversal. Defendants concede that the prosecutor's reference to MacDonald's not testifying was wholly inadvertent, that is, that it represented a verbal slip rather than a premeditated bad faith effort to extract advantage out of the defendants' decisions not to testify while cleverly guarding against risk of reversal. This fact alone would not immunize a comment if when placed in context it could have prejudiced any of the defendants. But we are satisfied that no prejudice occurred here since the context makes clear that defendant's silence was not referred to as impliedly confirmatory of the prosecutor's case, and the court gave an adequate curative instruction at the conclusion of the argument.

■ A more troublesome issue is raised by the trial court's instruction on reasonable doubt. The court variously instructed the jury that a reasonable doubt means "proof to a moral certainty, proof beyond a doubt for which you can give a reason"; at two other junctures, proof for which you can state "an intelligent reason". We have not before been faced with an instruction on reasonable doubt phrased in precisely these terms, although the overwhelming majority of courts which have confronted instructions containing a definition of reasonable doubt as a doubt "based on reason" or for which the juror can "give a reason" have not found reversible error.[4] In the context of the entire

3. 18 U.S.C. § 3481 abrogates the common law incompetency of a defendant as a witness in his own trial but also provides that the defendant's "failure to make such a request [to testify in his own behalf] shall not create any presumption against him."

4. *See, e. g.,* Scurry v. United States, 120 U.S.App.D.C. 374, 347 F.2d 468, 469 n. 2 (1965) ("a doubt that is based on reason, it is founded on reason, it is a doubt for which you may assign a reason"); United States v. Harris, 346 F.2d 182, 184 (4th Cir. 1965) ("a doubt for which

charge, we are convinced that the intent and effect of the court's reference to a "reason" or to an "intelligent reason" was solely to emphasize to the jury that its verdict should be the product of a rational thought process. Individual jurors were not charged with either articulating a supportable *ratio decidendi* or capitulating to the will of opposing jurors, but instead were cautioned in terms, which were perhaps unwisely emphatic, that a reasonable doubt was more than an irrational hesitancy to convict based on pure conjecture. We do not regard this formulation reversible as a matter of law.

■ We nevertheless feel constrained to add a cautionary note. Whatever their value in other areas of the law in adding zest or currency to otherwise all too predictable proceedings, personal variations on elements such as reasonable doubt seldom represent sound judicial practice. A common effect of such variations is to excite both controversy and appellate litigation without any offsetting assurance that the attempted clarification is either necessary, *see* 8 Moore's Federal Practice ¶ 30.06, or successful, *see* Holland v. United States, 348 U.S. 121, 140, 75 S.Ct. 127, 99 L.Ed. 150 (1954). Courts have consistently approved several standard formulations of the reasonable doubt standard and we

cannot conceive of any compelling need for an innovation such as that at issue here. Furthermore, we share the concern of those courts which, although tolerating similar instructions, have disapproved of them as flirting unnecessarily with an impermissible lessening of the government's burden of proof. We therefore suggest that district courts in this circuit refrain in the future from going outside of the consistently approved stock of charges on reasonable doubt with variations such as the one employed here.

■ Defendants' fourth contention is that the court erred in refusing to instruct the jury that it could not convict them of conspiracy to sell cocaine unless it found that they had a specific intent to violate the order form requirement contained in 26 U.S.C. § 4705(a). This contention was disposed of in United States v. Bradley, 455 F.2d 1181 (1st Cir. 1972), which held that the mental element required for conviction of conspiracy to violate 26 U.S.C. § 4705(a) is an intent to transfer narcotics illegally rather than an intent not to use an order form. The court's instructions, phrased in terms of the necessity of finding that the defendants specifically intended "to do something which the law forbids", appropriately conveyed this distinction.[5]

you can assign a reason") ; United States v. Davis, 328 F.2d 864, 867–868 (2d Cir. 1964) ("one for which, when asked what it is by a fellow juror, 'you can give a reason, then that indicates that it is a reasonable doubt' ") ; Bernstein v. United States, 234 F.2d 475, 486–487 (5th Cir. 1956) ("a doubt for which a reasonable man can give a reason") ; Freeman v. United States, 158 F.2d 891, 896 (9th Cir.), cert. denied, 331 U.S. 805, 67 S.Ct. 1187, 91 L.Ed. 1827 (1946) ("a doubt based on reason") ; Murphy v. United States, 33 F.2d 896 (3d Cir. 1929) ("a doubt for which some sound reason can be assigned in your minds") ; *Contra*, Pettine v. Territory of New Mexico, 201 F. 489, 595–597 (8th Cir. 1912) ("one for which a reason could be given").

5. In arguing that they cannot be convicted of a conspiracy to violate 26 U.S.C. §

4705(a) without proof that they knew of the order form requirement, defendants rely heavily on Judge Hand's observation in United States v. Crimmins, 123 F.2d 271 (2d Cir. 1941), to the effect that one cannot be held guilty of a conspiracy to run past a traffic light unless one supposes that there is a light to run past. We believe the more appropriate analogy for this case is that put by Judge Lay in Nassif v. United States, 370 F.2d 147, 153 n. 9 (8th Cir. 1966) :

"If one agrees to drive through a downtown section of a city at 60 mph without stopping, one could be guilty of conspiring to run past a traffic light, even though ignorant of such light, because one could reasonably suppose that there is such a light to run past."

*See also* United States v. Mingoia, 424 F.2d 710, 712 (2d Cir. 1970).

 Defendant Kelley further urges us to find error in the district court's negative ruling on his motion to suppress both the "sample" of cocaine given the student-informer and the larger quantity of cocaine seized in his shop at the time of his arrest. He argues that the sample should be excluded because of an alleged failure by the government to satisfactorily establish an unbroken chain of custody and that the larger quantity should have been excluded because it was seized without a warrant and without probable cause for getting one. We find no merit in either contention. The sample was tested, found to be cocaine and marked for identification purposes by the government agents assigned to the case. Both agents testified at trial regarding the procedure followed in testing and marking the sample and both identified the glassine bag introduced by the government at trial as the one containing the sample which they had tested. The jar containing the larger quantity of cocaine was not taken after a general exploratory search was conducted of the type condemned in Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). Given the high risk that the larger quantity of cocaine would be moved before a search warrant could be obtained, the knowledge that the sample had been drawn from a jar in a bookcase in the shop, and the fact that the jar containing the larger amount of cocaine was in plain view only a few feet from where Kelley was arrested, it was permissible for the agents to seize the jar and its contents in the process of arresting Kelley. *See* Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968); Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); United States v. Bradley, *supra* 455 F.2d 1181 at 1187; United States v. Palmer, 435 F.2d 653, 654–655 (1st Cir. 1970).

 Nor was it error for the district court to refuse to sentence Kelley under the Narcotics Addicts Rehabilitation Act of 1966 (NARA), 18 U.S.C. § 4251 et seq. Before an offender is referred to the Attorney General for an examination, the court should satisfy itself that there is some likelihood that the offender is in fact an addict. This is not a case like United States v. Williams, 407 F.2d 940 (4th Cir. 1969), in which the trial court was not adequately apprised of the existence of NARA and consequently did not consider sentencing under that Act. It was well within the sound discretion of the sentencing judge to decide here, as he apparently did, that there had been insufficient evidence introduced of Kelley's alleged addiction to justify invoking the procedures provided for in NARA. *See* 18 U.S.C. § 4252. *See also* United States v. Clayton, 450 F.2d 16 (1st Cir. 1971).[6]

 The only other issue requiring discussion relates to the sentencing of defendant Trott. Since Trott had been convicted on two counts of a narcotics charge arising under 26 U.S.C. § 4705(a), the trial judge regarded himself precluded by the broad mandatory language of 26 U.S.C. § 7237(d)[7] from imposing sentence under the Federal Youth Corrections Act (FYCA), 18 U.S.C. § 5005 et seq.[8] We are persuaded

---

6. If in fact, as appellant asserts, and the government does not deny, a post-trial motion was timely filed, calling attention to appellant's status as an addict and as having had no prior police record, and has not been acted upon, we suggest that appropriate action be taken without suggesting what that action should be.

7. 26 U.S.C. § 7237(d) provides that upon conviction of offenses specified therein, including the offense of which Trott was convicted, "the imposition or execution of

sentence shall not be suspended, [and] probation shall not be granted . . . ."

8. Counsel for Trott and the United States Attorney both asked that Trott be sen-

by the reasoning of the court in United States v. Colamarco, 320 F.Supp. 616 (E.D.N.Y.1970), that § 7237(d) does repeal so much of the FYCA, 18 U.S.C. § 5010(a), as would otherwise authorize outright probation or the suspension of a sentence imposed for violation of § 4705(a).[9] *See also* United States v. Gibbs, 285 F.2d 255 (9th Cir. 1960); United States v. Lane, 284 F.2d 935 (9th Cir. 1960). Like the court in *Colamarco,* however, we are convinced that the rehabilitative treatment and indeterminate sentence provided for in 18 U.S.C. § 5010(b) constitute neither "probation" nor a "suspension of sentence" of the sort interdicted by § 7237(d).[10] We therefore remand to the district court for reconsideration of Trott's sentence to make the findings required by the Federal Youth Corrections Act. *Cf.* United States v. Waters, 141 U.S.App. D.C. 289, 437 F.2d 722 (1970).

We have carefully considered the additional issues raised by the defendants in their briefs and at oral argument and have concluded that they are without merit. The convictions of defendants Kelley and MacDonald are affirmed in all respects; the conviction of defendant Trott is affirmed but his case is remanded to allow the district court to consider sentencing under the Federal Youth Corrections Act in accord with this opinion.

tenced under the Federal Youth Corrections Act, but the trial judge was "not convinced it is legally a proper sentence". Instead of directly sentencing Trott under the Youth Corrections Act, the trial judge "commit[ted] him to the custody of the Attorney General for the five-year mandatory minimum" and added that he would "direct the chief probation officer to write to the Bureau of Prisons that it is my recommendation Mr. Trott be placed in a type institution under the Youth Corrections Program."

9. 18 U.S.C. § 5010(a) provides that "[i]f the court is of the opinion that the youth offender does not need commitment, it may suspend the imposition or execution of sentence and place the youth offender on probation."

10. A youth offender sentenced under § 5010(b) of the Federal Youth Correction Act must be conditionally released before the expiration of four years from the date of conviction. Such youths must be unconditionally discharged on or before six years from the date of conviction. 18 U.S.C. § 5017(c).