**UNITED STATES of America,**
**Appellee,**

v.

**Richard J. TAYLOR, Jr.,**
**Defendant, Appellant.**

**No. 72–1231.**

United States Court of Appeals,
First Circuit.

Argued April 10, 1973.

Decided May 14, 1973.

Roger C. Park, Boston, Mass., by appointment of the Court, with whom Zalkind & Silverglate, Boston, Mass., was on brief, for appellant.

Alan R. Hoffman, Asst. U. S. Atty., with whom James N. Gabriel, U. S. Atty., was on brief, for appellee.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

COFFIN, Chief Judge.

Appellant Taylor was charged with four counts of selling cocaine in violation of 26 U.S.C. § 4705(a). His trial began on April 4, 1972. At the expiration of the morning session, at which appellant was present and during which the prosecution had presented testimony from one of its agents who had purchased the cocaine from appellant, the district court announced that there would be a lunch recess until 2 p.m. Appellant was also told by his attorney to return to the courtroom at that time. Despite this knowledge, appellant failed to return and after the neighboring halls and courtrooms were searched, the judge recessed the trial until the following morning. That morning appellant's wife testified that she had left the courtroom the previous day with her husband, that they separated after taking a cab to Roxbury, that he did not appear to be ill, and that she had not heard from him since.

Appellant's trial counsel then moved for a mistrial on the grounds that the jurors' minds would be tainted by appellant's absence and that to continue the trial would deprive appellant of the Sixth Amendment right to confront witnesses against him. This motion was denied, as the judge found appellant to have absented himself voluntarily from the proceedings and, pursuant to F.R.Crim.P. 43, continued the trial.[1] Throughout the remainder of the trial, the court scrupulously and more than once told the jury that they could not draw any inference of guilt from appellant's absence. Another motion for a mistrial on Fifth and Sixth Amendment grounds was denied before the jury was given the case. After deliberation, the jury found against appellant on all four counts. He was subsequently arrested and sentenced to the statutory five year minimum, to be served concurrently with a state court sentence, on July 6, 1972.

On appeal, appellant's main contention is that he was deprived of the right to confront witnesses against him under the Sixth Amendment and of due process of law under the Fifth Amendment as a result of the trial having continued in his absence. While recognizing the right to be present at every stage of one's trial may be waived, except in capital offenses, Diaz v. United States, 223 U.S. 442, 32 S.Ct. 250, 56 L. Ed. 500 (1912), appellant contends that generally a waiver of constitutional rights cannot be found in the absence of "an intentional relinquishment or abandonment of a known right or privilege", Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938), and that in the context of the right of con-

1. Rule 43 reads in part:
   "The defendant shall be present at the arraignment, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by these rules. In prosecutions for offenses not punishable by death, the defendant's voluntary absence after the trial has been commenced in his presence shall not prevent continuing the trial to and including the return of the verdict.
   . . . . "

frontation, appellant must have been warned of or be shown to have otherwise known the consequences of his absence—viz., that if he "voluntarily absented himself he would be deemed to have waived his constitutional right to testify and to confront witnesses against him so that the trial could continue without him." United States v. McPherson, 137 U.S.App.D.C. 192, 421 F.2d 1127 (1969).[2]

When we examine appellant's contention in regard to the Sixth Amendment right to confrontation in the circumstances of this case, his claim must be rejected. We agree with Judge Tamm in his dissent in *McPherson, supra* at 1131, that "the right that was involved was the right to be present. Thus it follows that if the defendant knew or should have known that he had a right to be present, his voluntary absence (and there is no doubt that his absence was voluntary) was a waiver of that 'known right.' "[3] We deem this reasoning dispositive here since there is no claim, nor do we think there can be under the facts before us, that appellant did not know that he had a right to be present in court during every stage of his trial, *cf.* Wade v. United States, 142 U.S.App.D.C. 356, 441 F.2d 1046 (1971), nor that his absence was due to anything but his voluntary choice.[4]

Appellant protests that this formulation of the confrontation right and its attendant waiver here is too narrow, since there is no indication that it was forfeited "with sufficient awareness of the relevant circumstances and likely consequences". Brady v. United States, 397 U.S. 742, 748, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747 (1970). He would have us believe that a defendant who flees from a courtroom in the midst of a trial —where judge, jury, witnesses and lawyers are present and ready to continue —would not know that as a consequence the trial could continue in his absence. We think that "this is one of those cases in which the imagination is baffled by the facts." Sir Winston Churchill, Bartlett's Familiar Quotations at 922 (14th ed. 1968). The very statement that a trial will continue or commence at a fixed time, when coupled with knowledge of one's right to be present at trial, implies that the continuation of the trial, at least in non-capital cases, does not depend on his presence. More pertinent, and more specific here, we note that at sentencing, when appellant was questioned regarding his flight from the trial, he made no contention that he was unaware of the fact that as a consequence of his flight the trial could continue in his absence.[5]

Moreover, we note that any Supreme Court precedent on this specific issue is

---

2. This issue is apparently still open for a definitive Supreme Court ruling. *See* Hensley v. Municipal Court, 411 U.S. 345, 93 S.Ct. 1571, 36 L.Ed.2d 294 (1973).

3. The majority opinion in *McPherson* stands alone in sharp contrast to other cases which have defined the scope of the right to confrontation more in accordance with Judge Tamm's views, including our implicit rulings on this point in Goitia v. United States, 409 F.2d 524 (1st Cir. 1969) and United States v. Miller, 463 F.2d 600 (1st Cir. 1972). *See also* United States v. Partlow, 428 F.2d 814 (2d Cir. 1970) ; United States v. Tortora, 464 F.2d 1202 (2d Cir.), cert. denied sub nom. Santoro v. United States, 409 U.S. 1063, 93 S.Ct. 554, 34 L.Ed.2d 516 (1972) ; United States v. Eskew, 460 F.2d 1028 (9th Cir. 1972) ; United States v. Garcia-

Turino, 458 F.2d 1345 (9th Cir. 1972) ; United States v. Cox, 459 F.2d 986 (5th Cir. 1972).

4. The court has made an independent finding on the issue of voluntariness, after examining transcripts from the trial and sentencing hearing, as we did in *Miller, supra*, 463 F.2d at 603 n. 4; *see also* Brookhart v. Janis, 384 U.S. 1, 4, 86 S.Ct. 1245, 16 L.Ed.2d 314 n. 4 (1966).

5. At the sentencing hearing, appellant went into his reasons for absconding. "The reason I left out of the courtroom is because it is not my lawyer's fault or anybody else's, it is just how things were coming out and I knew they were wrong and I don't you know, I didn't have a voice of saying whatever I wanted to say." "I got scared he couldn't defend me right because I left out of here."

supportive of our formulation of the right and its waiver in such cases. In *Diaz, supra,* a case in which the defendant expressly consented to the continuance of the trial in his absence, the Court cited with approval many relevant state and federal decisions, among them Fight v. State, 7 Ohio 181 (1835) and Falk v. United States, 15 App.D.C. 446 (1899), both involving a situation where the defendant left in the midst of a trial which the Court agreed was properly continued in the defendant's absence. Although we recognize that these cases antedate Johnson v. Zerbst, *supra,* we do not feel that we can overlook them.[6]

In any event, even if we were free to write on fresh foolscap, when we more closely examine the Supreme Court cases on which appellant relies, we see that their rationale does not support the position here advocated. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L. Ed.2d 694 (1966), required that one being interrogated by police authorities must not only be told that he has a right to remain silent, but must be told an important consequence of a waiver of that right—that anything that is said may be held against him. *Brady, supra,* and other cases involving guilty pleas require that a defendant be told exactly what rights he forfeits in foregoing a trial. In both cases we think that the consequences of the waiver were not so obvious or direct as those in a situation like the one before us. But, more important, those cases extended the constitutional umbrella so broadly because of other underlying problems. In *Miranda* the Court was concerned with the prob-

lems of direct coercion, the charged emotional atmosphere in many in-custody interrogations and the understandable fear held by an accused that he had better cooperate with the police if he hopes for any leniency later. In *Brady* the Court recognized that a multitude of extraneous factors, some of which might include improper prosecutorial activity, have frequently induced a decision to plead guilty. Thus, in both instances it was thought that the constitutional rights at stake could be meaningfully exercised only if the consequences of waiver were expressly told to the accused. These or similar underlying fears are simply absent in our case. A defendant free on bail, and thus not in custody, is not subject to any direct coercion to waive his right to be present at his trial. Nor might a defendant free on bail be led to believe that he could gain anything, certainly not favor with the authorities, by absenting himself from his own trial. We do not feel that the situation before us calls for an expansion of the holdings in *Miranda* and *Brady.*

An additional reason for our decision is what we perceive to be the enormous practical problems which adoption of the appellant's position could cause, so as to make the solution unworkable. While appellant contends that the explicit warning requirement he seeks to impose on the judicial system is salutary and would be easy to administer, in that only a few more words at the time bail is effectuated would be sufficient to satisfy the suggested requirement,[7] we do not view the matter so simply. We well an-

6. Illinois v. Allen, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970) in which the Court said that before an unruly defendant could be said to lose his right to be present at his own trial, he must be specifically so warned and told that the trial would continue in his absence, is significantly distinguishable from the instant case. It involves, most fundamentally, a removal from the courtroom which is effectuated by a physical act or threat of a governmental agent and not, as here, a voluntary and uncoerced flight. More-

over, the therapeutic value of a warning in a case like *Allen,* whereby the unruly defendant's course of action may be immediately and voluntarily terminated, is totally absent here where the wrongful act, the decamping, leaves no one to warn.

7. The warning might, according to appellant, consist of the following: "I inform you that you have a right to be present at every stage of your trial, but that if you voluntarily absent yourself at any stage of the proceedings, they may be continued in your absence."

ticipate the argument that a defendant who did not appear at his trial several months after bail was provided should not be expected to remember the initial admonition given by the magistrate who enlarged him. Aside from such problems relating to timing, we wonder exactly what consequences of waiver might be incorporated into a warning to a defendant. He might be told that he would waive his right to confront witnesses against him. He might also be told that although relevant testimony given in his absence might be capable of being rebutted by any witnesses or evidence the defendant desires to introduce, his leaving the trial would, as a practical result, leave him without compulsory process for obtaining important witnesses in his favor. He might be told that his counsel would be unable to properly continue his defense without his aid, and so he would thereby be waiving the effective assistance of counsel. He might also be told that he would waive his right to testify in his own behalf. We hesitate to catalogue the various consequences which could result when a defendant absconds from trial. It is sufficient to state that we are disinclined to go beyond what the Supreme Court has thus far required in this situation, and, in effect, impose upon a trial court an added ritual of explanation which would be comparable to that administered to a defendant before accepting a plea of guilty.

Lastly, we are not without any Congressional guidance in this matter. Rule 43 of F.R.Crim.P. allows the continuation of a trial despite "the defendant's voluntary absence". There is no indication that the rule requires anything more than what we have found to be the present constitutional standard for waiver in this case, i.e., simply knowledge of the right to be present and voluntary absence. In fact, the rule may work an even more absolute forfeiture of the right of confrontation than we have suggested, see generally, Davis v. United States, 411 U.S. 233, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973),[8] though we are not called upon to decide that issue at this time.

We therefore conclude that the district court did not violate the Sixth Amendment in continuing the trial pursuant to F.R.Crim.P. 43 in appellant's voluntary absence. Additionally, whatever might be the result in other cases where actual prejudice amounting to a miscarriage of justice could be demonstrated, we do not believe that the continuation of the trial here constituted a denial of due process.

■ Appellant's second basis for this appeal is that the court committed plain error when it charged the jury as to reasonable doubt.[9] He relies particularly on United States v. MacDonald, 455 F.2d 1259 (1st Cir. 1972), decided three weeks before the charge here was given,

8. In *Davis*, Mr. Justice Rehnquist, speaking for a majority of the Court, wrote that F.R.Crim.P. 12(b)(2), which requires certain defects in the institution of a prosecution or indictment to be raised before trial and that failure to do so constitutes a waiver thereof, precludes subsequent raising of a claim of unconstitutional composition of the grand jury which returned the indictment. Noting that the jury selection system there attacked "had been openly followed for many years prior to petitioner's indictment", *id.*, at 235 of 411 U.S., at 1579 of 93 S.Ct., the Court did not utilize the proffered standard of Johnson v. Zerbst, *supra*, that waiver must be "understand-

ingly and knowingly" effectuated, in ruling that the petitioner had forfeited his right to raise the constitutional claim pursuant to Rule 12(b)(2).

9. The charge, not objected to, stated in part: "If you do not accept the testimony as clear evidence of his guilt, if you find that from the testimony you cannot make up your minds, that you are wavering back and forth *because of some reason, some valid reason*; or if after reaching a judgment it does not remain, so that you say: 'I'm not so sure, I can't, I can't accept that'—then the government has failed to prove the commission of the crime beyond a reasonable doubt." [Emphasis added.]

in which we cautioned district courts not to deviate from the consistently approved stock of charges on reasonable doubt. We did not, however, find the charge in *MacDonald*, which included two references to "intelligent reason" and one to "proof to a moral certainty, proof beyond a doubt for which you can give a reason", to constitute plain error. *A fortiori*, we think that in the context of the entire charge here the solitary, off-handed reference to "valid reason" does not call for reversal as a matter of law.

Affirmed.