Richard DUNN, Petitioner, Appellant,

v.

Everett I. PERRIN, Jr., Respondent, Appellee.

Laurence BLACK, Petitioner, Appellant,

v.

Edward COX et al., Respondents, Appellees.

Nos. 77–1408 and 77–1412.

United States Court of Appeals, First Circuit.

Argued Dec. 7, 1977.

Decided Feb. 2, 1978.

---

Gilbert Upton, Concord, N. H., for petitioner, appellant, Richard Dunn.

Carroll F. Jones, Concord, N. H., with whom McSwiney, Jones & Semple, Concord, N. H., was on brief, for petitioner, appellant, Laurence Black.

James L. Kruse, Asst. Atty. Gen., Concord, N. H., with whom David H. Souter, Atty. Gen. and Edward A. Haffer, Asst. Atty. Gen., Concord, N. H., were on brief for respondent, appellee.

Before COFFIN, Chief Judge, ALDRICH and CAMPBELL, Circuit Judges.

COFFIN, Chief Judge,

Petitioners, convicted of separate crimes in two state trials, sought habeas corpus and appeal the district court's denials of the writ. While different juries heard petitioners' trials, the instructions on reasonable doubt were virtually identical. We reproduce in the margin the instructions as given in Dunn's case.[1] The New Hampshire Supreme Court concluded, in both cases, that the charge as a whole conveyed the correct concept of reasonable doubt. *State v. Black*, 116 N.H. 836, 837, 368 A.2d 1177 (1976); *State v. Belkner, et al.*, N.H., 374 A.2d 938 (1977). The district court also found no constitutional error when it read the charge as a whole.

We are compelled to disagree. We are fully aware that the charge in each case, apart from its definition of reasonable doubt, is replete with reminders that every element of the crime charged must be proven beyond a reasonable doubt. But the passage defining that critical concept contained no fewer than three different misstatements, ranging from the dubious to the patently erroneous. With this linchpin so weakened, we cannot label the errors harmless beyond a reasonable doubt.

Reasonable doubt is at best a difficult concept to explain to a lay jury. It is also a concept informed by an abundance of precedent. It is not surprising that appellate courts have repeatedly cautioned that attempts to explain reasonable doubt seldom clarify the concept and may flirt with an impermissible reduction of the prosecution's burden of proof. *See Miles v. United States*, 103 U.S. 304, 312, 26 L.Ed. 481 (1880); *United States v. MacDonald*, 455 F.2d 1259, 1263 (1st Cir. 1972). Nevertheless, the court in these two cases obviously felt that a variety of approaches might clarify the concept.

■ The first formulation was to explain reasonable doubt as "doubt as for the existence of which a reasonable person can give or suggest a good and sufficient reason." Similar qualifications have received judicial criticism. *See id.* at 1263 (jury must find an "intelligent reason"); *United States v. Christy*, 444 F.2d 448, 450 (6th Cir. 1971) (proof must leave the jury with no "reasonable, substantial doubt"). While standing alone, this portion of the charge might not be reversible error, *United States v. MacDonald, supra*, we think it was improper. It suggested that a doubt based on reason[2] was not enough to acquit, implicitly putting petitioners to the task of proving that the reason was "good and sufficient". *See Cool v. United States*, 409 U.S. 100, 104, 93 S.Ct. 354, 34 L.Ed.2d 335 (1972) (per curiam).

■ What immediately followed this questionable definition of reasonable doubt was clearly wrong. The court spoke in these words:

"It [reasonable doubt] does not mean a trivial or a frivolous or a fanciful doubt

1. "The term reasonable doubt, as I use it, means just what those words ordinarily imply. It is a doubt which is reasonable and excludes a doubt which is unreasonable. It is such a doubt as for the existence of which a reasonable person can give or suggest a good and sufficient reason. It does not mean a trivial or a frivolous or a fanciful doubt nor one which can be readily or easily explained away, but rather such a strong and abiding conviction as still remains after careful consideration of all the facts and arguments against it and would cause a fair-minded person to refrain from acting in regard to some transaction of importance and seriousness equal to this case. It is not the object of that rule of proof to impose upon the State an impossible burden, nor is it intended to make you examine and judge the evidence in any strange, peculiar, unreasonable, or extraordinary manner. It is a matter of common knowledge to us all that absolute positive certainty in regard to many of the affairs of life can almost never be attained; and even in our most important matters, we frequently act upon information which we do not positively know to be absolutely true and which we have no means of verifying, but as to the truth of which we are morally certain. In such instances, there is no reasonable doubt. But where our belief in a fact is so uncertain that we would hesitate to undertake something of importance and seriousness equal to these cases upon the strength of it, then there is a reasonable doubt."

2. Definition of reasonable doubt as doubt which is reasonable has been upheld by numerous courts. *See United States v. MacDonald*, 455 F.2d 1259, 1262–63 n. 4 (1st Cir. 1972).

nor one which can be readily or easily explained away, but rather such a strong and abiding conviction as still remains after careful consideration of all the facts and arguments . . . ."

In *United States v. Flannery*, 451 F.2d 880, 883 (1st Cir. 1971), we condemned virtually that exact wording. Although the existence of other reversible error in *Flannery* made it unnecessary for us to resolve the constitutional implications of such a charge, we do so now. That definition of reasonable doubt was the exact inverse of what it should have been. *See United States v. Magnano*, 543 F.2d 431, 436 (2d Cir. 1976); *Bernstein v. United States*, 234 F.2d 475, 486 n. 8 (5th Cir. 1956). Instead of requiring the government to prove guilt, it called upon petitioners to establish doubt in the jurors' minds.[3] That is an inescapable violation of *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1969).

The court, continuing in its efforts to clarify, added:

"It is a matter of common knowledge to us all that absolute positive certainty in regard to many of the affairs of life can almost never be attained, and even in our most important matters, we frequently act upon information which we do not positively know to be absolutely true and which we have no means of verifying, but as to the truth of which we are morally certain. In such instances, there is no reasonable doubt."

■ Authorities differ on the advisability of equating proof beyond a reasonable doubt with establishment of guilt to a moral certainty. *See United States v. Magnano, supra*, 543 F.2d at 437; *United States v. Byrd*, 352 F.2d 570, 575 (2d Cir. 1956). We need not take sides in that controversy, however, for proof to either degree based on admissible evidence and proper inferences is far different from what was authorized here. This charge permitted the jury to convict or acquit on the basis of information incapable of verification. Yet the essence of the reasonable doubt standard is that guilt be established not on speculation or intuition, but on evidence and the inferences permitted by law. *See Miles v. United States, supra*, 103 U.S. at 309, 26 L.Ed. 481; *United States v. Guglielmini*, 384 F.2d 602, 607 (2d Cir. 1967).[4]

■ Finally, petitioners challenge that portion of the charge which defined reasonable doubt as that which would cause the jurors "to refrain from acting in regard to some transaction of importance and seriousness . . . ." That phrase has two elements: reference to refraining from action (as opposed to something like "to be willing to act") and comparison of the decision on guilt or innocence with an important transaction in ordinary life. Addressing the second first, we note that comparison of reasonable doubt in criminal cases with the standard employed by jurors to make even the most significant decisions in their daily lives has been criticized for its tendency to trivialize the constitutionally required burden of proof. *See Scurry v. United States*, 120 U.S.App.D.C. 374, 376, 347 F.2d 468, 470 (1965); *Commonwealth v. Ferreira*, Mass., 364 N.E.2d 1264 (1977).[5] By contrast the

---

**3.** The state argues that, taken in context, the phrase "strong and abiding conviction" refers not to doubt, but to guilt. While we can see how such an interpretation can be offered, we cannot expect a jury to brush aside grammar and intuit a more sensible meaning, at least not when so crucial a concept as reasonable doubt is our focus.

**4.** The inclusion of other incorrect explanations of reasonable doubt in this charge obviates the need to decide whether this portion would, by itself, warrant reversal.

**5.** Judge Wright observed in *Scurry v. United States*, 120 U.S.App.D.C. 374, 376, 347 F.2d 468, 470 (1965):

"A prudent person called upon to act in an important business or family matter would certainly gravely weigh the often neatly balanced considerations and risks tending in both directions. But, in making and acting on a judgment after so doing, such a person would not necessarily be convinced beyond a reasonable doubt that he had made the right judgment. Human experience, unfortunately, is to the contrary."

The Supreme Judicial Court of Massachusetts agrees:

"The degree of certainty required to convict is unique to the criminal law. We do not think that people customarily make private decisions according to this standard nor may

"refrain from acting" portion of the charge given here has received widespread approval among the circuits.[6] *See Holland v. United States*, 348 U.S. 121, 140, 75 S.Ct. 127, 99 L.Ed. 150 (1954); *United States v. Robinson*, 546 F.2d 309, 313 (9th Cir. 1976); *United States v. Leaphart*, 513 F.2d 747, 750 (10th Cir. 1975); *United States v. Dixon*, 507 F.2d 683, 684 (8th Cir. 1974); *United States v. Richardson*, 504 F.2d 357, 361 (5th Cir. 1974); *United States v. Restaino*, 369 F.2d 544, 546 (3d Cir. 1966). We find no constitutional infirmity in the combined effect of these two components.

■ What remains to be resolved is whether those portions of the charge we have found to be erroneous warrant relief by habeas corpus. After *In re Winship, supra*, 397 U.S. at 364, 90 S.Ct. 1068, it is obvious the errors are of constitutional magnitude.[7] As the Supreme Court noted, the right to proof beyond a reasonable doubt is indispensable for a criminal defendant. *Id.* at 364, 90 S.Ct. 1068. Discussion of the concept is perhaps the most important aspect of the closing instruction to the jury in a criminal trial. *Commonwealth v. Ferreira, supra*, Mass., 364 N.E.2d 264 (1977).

■ Here reasonable doubt was improperly defined three times. This is thus not a technical error appearing in "artificial isolation", *Cupp v. Naughten*, 414 U.S. 141, 147, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973), or one that was cured by an otherwise proper charge. *See United States v. Park*, 421 U.S. 658, 674, 95 S.Ct. 1903, 44 L.Ed.2d 489 (1974). The cumulative effect of the three errors was to obfuscate one of the "essentials of due process and fair treatment". *In re Winship, supra*, 397 U.S. at 359, 90 S.Ct.

at 1070. Although the evidence against both petitioners was substantial, it could not be said to have been overwhelming. *See Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1968). Thus a distinct possibility existed that the jury was misled by the charge. *See Andres v. United States*, 333 U.S. 740, 752, 68 S.Ct. 880, 92 L.Ed. 1055 (1947).

In *Chapman v. California*, 386 U.S. 18, 20, 87 S.Ct. 824, 17 L.Ed.2d 705 (1966), the Supreme Court indicated that some constitutional errors may be so substantial that they can never be harmless. We leave to another day the question of whether this was such an error. Under the circumstances presented here, a finding of harmlessness beyond a reasonable doubt is not permitted us.

The judgment of the district court is reversed. The writ of habeas corpus shall issue unless, within 90 days from the date of this opinion, the state has either reinstituted proceedings to retry the petitioners or applied for a writ of certiorari. If certiorari is sought and granted, issuance of the writ of habeas corpus shall be stayed pending further order of the Supreme Court. If certiorari is sought and denied, the writ of habeas corpus shall issue unless the state has initiated retrial of the petitioners within 30 days after the date certiorari is denied. Petitioner Black shall remain on bail until such time as retrial is commenced, unless the Supreme Court otherwise orders.

*So ordered.*

---

it even be possible to do so. Indeed, we suspect that were this standard mandatory in private affairs the result would be massive inertia. Individuals may often have the luxury of undoing private mistakes; a verdict of guilty is frequently irrevocable." *Commonwealth v. Ferreira*, Mass., 364 N.E.2d 1264, 1273 (1977).

6. The phrases "hesitate to act" and "refrain from acting" are used interchangeably in the case law.

7. Although in these habeas appeals we are called upon to review state court convictions, the fact that a constitutional right is implicated permits reference to federal precedents for the determination both of whether a violation occurred and whether it was harmless. *Chapman v. California*, 386 U.S. 18, 21, 87 S.Ct. 824, 17 L.Ed.2d 705 (1966).