**Robert BUMPUS, Petitioner–Appellant,**

v.

**Frank GUNTER et al.,
Respondents–Appellees.**

**No. 80–1114.**

United States Court of Appeals,
First Circuit.

Argued May 8, 1980.

Decided Dec. 3, 1980.

Norman S. Zalkind, Boston, Mass., by appointment of the Court, and Stephen Saltonstall, with whom Zalkind & Zalkind, Boston, Mass., was on brief for petitioner–appellant.

Barbara A. H. Smith, Asst. Atty. Gen., Boston, Mass., with whom Francis X. Bellotti, Atty. Gen., and Stephen R. Delinsky, Asst. Atty. Gen., Chief, Criminal Bureau, Boston, Mass., were on brief, for respondents–appellees.

Before COFFIN, Chief Judge, CAMPBELL, Circuit Judge, and DAVIS,* Judge, U. S. Court of Claims.

LEVIN H. CAMPBELL, Circuit Judge.

Robert Bumpus appeals from the dismissal by the district court of his petition for habeas corpus. Bumpus attacks his conviction in the Massachusetts Superior Court on various grounds, the most serious of which, in our view, concerns alleged constitutional inadequacies in the trial court's instructions to the jury on reasonable doubt. The district court analyzed carefully the disputed portions of the jury charge and held that the charge did, in fact, suffer from deficiencies of a constitutional magnitude. After a subsequent hearing, however, the court determined that these errors were harmless beyond a reasonable doubt; it therefore denied the writ.

## I.

We disagree with the district court's mode of analysis, although not with its end result. In our view, the district court applied a less rigorous standard than was appropriate in deciding whether defects in the charge amounted to "constitutional error," and then rescued the charge by applying harmless error review. This approach resulted in dignifying as "constitutional error" flaws in the court's charge which were not of that level of seriousness, and then, in effect, downplaying the concept of constitutional error by holding that it was harmless.[1]

---

* Sitting by designation.

1. In fairness, the two errors tended to cancel one another out. The district court's ultimate

In cases like this, where the reasonable doubt instructions given in a state criminal trial are alleged to have been constitutionally infirm, the question of whether there was constitutional error will normally be dispositive. This is so because the finding of "constitutional" error itself imports the existence of flaws so serious as to have resulted in a fundamentally unfair trial. As the Supreme Court said in *Cupp v. Naughten*, 414 U.S. 141, 145–46, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973), however, even instructions that are "undesirable, erroneous, or ... 'universally condemned,'" are not necessarily constitutionally infirm; the test is whether the "ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." Here petitioner claims the effect of the charge was to vitiate the requirement that guilt be proven beyond a reasonable doubt, in derogation of the standard held to be constitutionally mandated in all state and federal criminal trials. *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). A supported finding to this effect would go a long way to strip the conviction of legitimacy. We need not, perhaps, go as far as to say that error of even this magnitude could never be salvaged. *See Dunn v. Perrin*, 570 F.2d 21, 25 (1st Cir. 1978) (leaving to "another day" decision whether constitutionally defective charge on reasonable doubt can ever be harmless). But if such a case can be conceived, it would have to contain unique circumstances not present here.

We thus proceed to ask whether the challenged aspects of the charge so infected the entire charge and trial as to cause the jury to evaluate petitioner's guilt or innocence under a standard less than "beyond a reasonable doubt." We believe the answer to be "No." While there were statements in the charge that were better left unsaid, neither singly nor collectively were these

---

evaluation of the charge comes out much the same as ours.

flaws so serious as to deny petitioner the fundamental right that his guilt be evaluated under the proper standard. The state court delivered correct basic instructions on reasonable doubt and burden of proof; its lapses in the course of lengthy explanations and illustrations designed to improve the jury's understanding of these concepts were of less than fundamental import.

We turn now to the challenged aspects of the instructions.

1. Petitioner first criticizes the portion of the court's charge that a reasonable doubt

> "has to be a doubt in your mind that you can stand up in the jury room and argue with principle and integrity to your fellow jurors, and if you have that kind of a doubt on any area in this case, the defendant is entitled to be acquitted."

In 1972, two years after the subject trial, we criticized language of a similar cast in *United States v. MacDonald*, 455 F.2d 1259, 1262–63 (1st Cir.) ("proof . . . for which you can give a reason" or "for which you can state an 'intelligent reason' "). We did not, however, reverse, although in *MacDonald* we were exercising direct supervisory review over a federal court, and not the more limited habeas corpus review. Six years later, in *Dunn v. Perrin*, 570 F.2d 21, 23 (1st Cir. 1978), a habeas case, we criticized as "improper" the formulation, "doubt as for the existence of which a reasonable person can give or suggest a good and sufficient reason," but intimated on the basis of *MacDonald* that, standing alone, this language was not cause for reversal. Most recently, in *Tsoumas v. State of New Hampshire*, 611 F.2d 412, 413 (1st Cir. 1980), we upheld a definition of reasonable doubt as a doubt

> "which is reasonable, rather than unreasonable; it must be a doubt based on reason. It is not a frivolous or fanciful doubt, nor is it one that can easily be explained away . . . [I]t is such a doubt, that is reasonable doubt, based upon reason as remains after consideration of all the evidence that the State has offered against it."

■ In light of these precedents, we cannot say that the challenged language was so improper as to amount to constitutional error. The instruction might indeed seem less objectionable than that in *Dunn v. Perrin*, where the judge required a "good and sufficient reason"; here the judge spoke only of the ability to argue "with principle and integrity." The worst feature is the possible suggestion that a timid juror might have to stand up in the jury room and argue in order to justify a vote to acquit. *Cf. Owens v. Commonwealth*, 186 Va. 689, 706, 43 S.E.2d 895 (1947). But the language was, as the Massachusetts Supreme Judicial Court observed "figurative." *Commonwealth v. Bumpus*, 362 Mass. 682, 290 N.E.2d 167. Unless this court is to end up imposing pattern jury instructions, we must tolerate a reasonable range of expression, some or even much of which may not suit our fancy. In *Cupp v. Naughten*, the Court spoke approvingly of the "well–recognized and long-established function of the trial judge to assist the jury by such instructions" (*i. e.*, instructions on burden of proof and the like) and warned against reliance on "abstract and conjectural emanations from *Winship*." 414 U.S. at 149, 90 S.Ct. at 401. While we do not endorse, and indeed, caution against, the challenged language, we do not find its use to have amounted to error of constitutional dimension.

2. Petitioner argues that instead of requiring the government to prove guilt, the court called upon the accused to establish doubt in the jury's mind. *Cf. Dunn v. Perrin*, 570 F.2d at 24. This was done, it is asserted, by constant assertions of what a reasonable doubt was *not*. Petitioner assembles from the charge a list of fourteen statements beginning with "proof beyond a reasonable doubt is not 'proof beyond all doubt,' " and ending with "A moral certainty is 'less than a mathematical certainty and less than a scientific certainty.' " Cumulatively these are said to have vitiated the government's burden.

■ It is to be remembered, however, that these remarks have been separately culled from a very lengthy charge. They,

and the emanations from them, must be assessed along with the rest of the charge which includes extensive earlier emphasis on the presumption of innocence, and numerous reminders that the jury had a duty to acquit upon the "failure of the Commonwealth to establish beyond a reasonable doubt any essential element necessary to sustain a conviction of the crime." While the judge placed what we regard as an uncomfortable degree of emphasis on the limits of the government's burden, his fulsome treatment was in keeping with the lengthy treatment accorded other subjects, and the charge in its entirety was not so unbalanced as to undercut the reasonable doubt standard, nor was it basically inaccurate. The jury was repeatedly advised as to the correct burden of proof, was admonished to render an impartial verdict, and was informed throughout of the solemnity of its responsibility.

■ 3. Petitioner takes issue with the following portion of the charge which came after the statement that proof beyond a reasonable doubt does not mean proof beyond all doubt, and that it is "rarely, if ever, possible to find a case so clear that there cannot be a possibility of innocence." The challenged language is as follows:

> "If an unreasonable doubt or a mere possibility of innocence were sufficient to prevent a conviction, practically every criminal would be set free to prey upon the community. Such a rule would be wholly impractical and would break down the forces of law and order and make the lawless supreme."

We do not agree with petitioner that this language is, in effect, an invitation to disregard the reasonable doubt standard. Rather—quoting it would appear from a Massachusetts judicial decision—the judge was purporting to explain why the standard of proof required only what it did. The emotional overtones of such rhetoric may be criticized as subtly encouraging a jury to accept less proof than it should, so that "the lawless" will not be "supreme." Still, the instruction did not advocate deviating from the reasonable doubt standard; it merely

told why the government's burden was less than absolute. Jurors are adults, and we are warned not to assess an instruction "in artificial isolation." *Cupp v. Naughten*, 414 U.S. at 147, 94 S.Ct. at 400.

> "[A] judgment of conviction is commonly the culmination of a trial which includes testimony of witnesses, argument of counsel, receipt of exhibits in evidence, and instruction of the jury by the judge. Thus not only is the challenged instruction but one of many such instructions, but the process of instruction itself is but one of several components of the trial which may result in the judgment of conviction." *Id.*

■ 4. Petitioner objects to the court's assertion, "I impress upon you that it is not beyond the possibility of your being wrong, so don't let that be a haunting thought which bothers you." While still disturbing, the sentence in question is ameliorated by the fact that it is part of a lengthy discussion of reasonable doubt; it must be read with all that came before and after. Directly before it had come the assertion, already referred to, that a reasonable doubt had to be a doubt that could be argued with principle and integrity to fellow jurors, ending with the conclusion, helpful to defendant,

> "and if you have that kind of doubt on any area of this case, the defendant is entitled to be acquitted."

Then came the statement in question, that proof beyond a reasonable doubt need not be beyond

> "the possibility of your being wrong, so don't let that be a haunting thought which bothers you. If you are satisfied in accordance with the standard that I have indicated beyond a reasonable doubt, to a moral certainty, because otherwise you place upon the Commonwealth a burden which it does not have ... A moral certainty is less than a mathematical certainty and less than a scientific certainty; because human beings are endowed with a free mind and a free will, that you can't put their conduct into a computer or a test tube and come out with an answer."

In context, we do not agree with the district court that the criticized language amounted to telling the jury, in some general sense, not to worry about being wrong. Far from encouraging a cavalier approach, the court throughout its charge went to utmost pains to emphasize, in almost cathedral tones, the solemnity of the jury's responsibilities. What the court seems to have been attempting to emphasize was that the government did not have to establish guilt beyond any and all possibility of error. That, in fact, is so.

■ Petitioner, on the same theme, points to another instruction in a different part of the lengthy charge where the court was reviewing the evidence, to wit, "I don't want you to be deterred on the identification evidence by the possibility that you might be wrong." In context, this statement, while less than clear, seems to have been distinguishing between eyewitness identification and other evidence of guilt, and also to be reminding the jurors of the limits of the government's burden. We do not think it constituted an instruction to convict even if unsure that the accused was guilty. The whole instruction went like this:

"So on identification, you should be satisfied by the burden of proof beyond a reasonable doubt, and if the identification itself does not satisfy you, then it doesn't preclude you from considering all the other evidence in the case in order to decide guilt or innocence.

"As a matter of fact, it is your obligation to do so, and you can weigh the identification as much as it impresses you, if less than absolute, with all the other evidence in the case to test whether the identification is good or is inaccurate.

"I don't want you to be deterred on identification evidence by the possibility that you might be wrong, because that is not the burden of the Commonwealth. The burden of the Commonwealth is to satisfy you beyond a reasonable doubt."

Taking the instruction as a whole, we do not believe the above detracted from petitioner's right to have his guilt or innocence evaluated under the proper reasonable doubt standard.

■ 5. We see no ground for finding constitutional error in the court's equation of reasonable doubt and moral certainty, followed by its description of moral certainty as "being satisfied in your minds and your consciences with the same degree of satisfaction that you would look for when you took action in the major affairs of life." Nor do we find constitutional error in what followed, the court saying,

"Now, if affairs in your life are not major and not critical, or minor, maybe you would take action without the degree of certainty that the court asks of you to have in weighing the guilt or innocence of a defendant.

"But I am going to pose to you what I think would be a major affair of your life.

"If you were a young man with a growing family and it was determined that you had a definite deficiency in your heart valve, your surgeon might well advise you that if you had corrective surgery, the heart valve deficiency could be cured and you would live a normal and useful and healthy life.

"He might also advise you that the operation was attendant with great risk, you might not survive the operation, and he also might advise you that if you don't have the operation, you might die at any time, you may live a few years, and you may live a normal life.

"In that situation, you have to make a judgment in the interests of your own health, in the interests of your family and your responsibilities to them. I would say that was a major affair in your private lives.

"Now, none of us have a crystal ball. None of us can foresee the future and we have to take a course of action. Now, all we can do is listen to the arguments for and the arguments against by those who are best able to advance those arguments to understand the pros and cons, to weigh all the evidence on both sides and then when it has been concluded make a judg-

ment, either to have the operation or not to have it.

"If you are satisfied to a moral certainty that having weighed and evaluated everything that can be considered on the subject, the course of action you are taking is the right course for you to take. If you have a settled conviction that you are doing the right thing, that is what the law considers to be satisfaction to a moral certainty. That is what the law is looking for when they ask you to be satisfied to a moral certainty in pondering and weighing this issue of reasonable doubt. It asks nothing more.

"This is a major affair in the lives of all of us, this trial, so look for the same degree of satisfaction, of proof of the essential elements of these crimes that you would look for in major affairs of your own lives before you took action."

In *Dunn v. Perrin*, this court observed that some courts have criticized a comparison of reasonable doubt in criminal cases with the standard employed by jurors to make significant decisions in their daily lives, 570 F.2d at 24. Nonetheless, we upheld the charge there against a similar criticism, and recently we refused to classify such a comparison as constitutional error. *Grace v. Butterworth*, 635 F.2d 1 (1st Cir. 1980), *modified* (June 27, 1980). By the same token, we do not now accept either petitioner's argument that such comparison is unconstitutional, or petitioner's further arguments bottomed on criticism of the elaborate heart operation analogy drawn by the judge. The analogy was flawed, as a logical matter, since it presented a case in which either one of two possible choices was fraught with risk and therefore neither choice could be made with anything approaching moral certainty. The jurors may have been baffled by this inconsistency but we see little danger that they were affirmatively misled by what amounted to an extended non sequitur. The thrust of the analogy, involving a life-threatening situation, was certainly not to trivialize the jurors' duty, nor, taken in the common sense way one would expect jurors to receive it, does the example seem to us to

undermine the government's burden, elsewhere reiterated, to establish guilt beyond a reasonable doubt. We said in *Grace v. Butterworth*, 635 F.2d 1 at 6 (1st Cir. 1980),

"Although we reiterate our concern that use of the type of analogies invoked by the trial judge to help explain the reasonable doubt standard may in fact understate the degree of certainty required for a criminal conviction, we do not believe that because the judge explicitly stated the ordinary-life analogies that were merely implicit in *Dunn* this aspect of the charge had a significantly more detrimental impact on appellants' rights. We do not exercise supervisory power over the state courts of Massachusetts; our review of their criminal proceedings is limited to those instances in which 'the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.' ..."

Some of the ordinary-life analogies accepted in *Grace* were less momentous than the heart operation described here. We do not find constitutional error.

In refusing to issue the writ of habeas corpus we do not mean to put our stamp of approval upon the language used in the criticized instructions. The decade of the 1980's will continue to see a heightened awareness of the dangers lurking in some of the hoary, oft-repeated illustrations used up through the 60's and early 70's to breathe life into the reasonable doubt standard. Such awareness may lead to generally stricter requirements as to what is acceptable and may even result in more helpful charges—although the latter is perhaps debatable if judges are driven to seek safety in eschewing all illustrations and attempts at explanation. We hold here merely that imperfections in the instant jury charge were not of such magnitude as to have deprived petitioner of his basic right to be tried and convicted only under the standard of "proof beyond a reasonable doubt," nor did they in any other respect deprive him of due process.

**914**

## II.

■ Petitioner complains that it was a violation of his constitutional rights to compel him to be seated in the dock during the trial. We agree with the district court that no violation of constitutional rights occurred.

The Massachusetts Supreme Judicial Court has described the dock as follows:

"Most court rooms used for criminal sessions in the Commonwealth are equipped with a dock, a wooden enclosure, usually measuring four or five feet square, in which it has long been customary for the defendant to sit during trial. The dock is open at the top, so that the upper torso of a seated person is visible. The judge, the court clerk, court officers and the jury occupy similar enclosures, the arrangement of which varies from court room to court room. The dock as we know it appears to be a vestige of the English baledock."

*Commonwealth v. Moore,* —— Mass. ——, 393 N.E.2d 904, 906–07 (1979). In the case just cited, the Supreme Judicial Court took note of our recent criticism of the dock in *Walker v. Butterworth,* 599 F.2d 1074, 1080–81 (1st Cir. 1979); it ruled that henceforth a Massachusetts accused should be permitted to sit at counsel table except where "some form of restraint is necessary to prevent escape or to protect others in the court room." In the latter situation, the obstacle imposed by the dock, though minor, was felt to give officers time to reach an escaping or disruptive defendant, and was further justified as a possible screen that would keep the jurors from seeing any shackles that might be required. 393 N.E.2d at 908. Thus the Supreme Judicial Court has authorized continued use of the dock in limited circumstances where security requires, but not otherwise. That decision came, of course, nine years after petitioner's trial. At that time, defendants commonly occupied the dock, though individual judges, upon request, might allow them to sit with counsel.

The concerns over use of the dock expressed by this court in *Walker v. Butterworth* would appear to be satisfied by the policy announced in *Commonwealth v. Moore.* And given the specific and supported security reasons stated by the Superior Court judge for use of the dock in the trial which is the subject of the instant proceeding, we need proceed no further. Even assuming that compelled use of the dock, without a security motive, could be deemed analogous to compelled appearance in prison garb, *see Estelle v. Williams,* 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1975), it is clear that a trial court may employ security devices in the presence of the jury upon a proper showing of necessity. *Id.,* at 505, 96 S.Ct. at 1693; *Illinois v. Allen,* 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970). Thus to the extent the dock, unlike prison garb, served a legitimate security purpose, it would not be unconstitutional. Here the district court made supported findings, based on the state record, that defendant's pretrial behavior had been "erratic and highly unstable, to say the least." Instances of violent and possibly self–destructive conduct are mentioned. Defendant had been committed for psychiatric examination and had considered a plea of insanity. While petitioner's attorney argued that less restrictive means of restraint were available, the district court found he had suggested none, and the district court disagreed that any were available. The dock itself, which is similar in appearance to the enclosures often occupied by clerks and court attendants, is scarcely as stigmatizing as, for example, gags and shackles. Even assuming without deciding that there is a constitutional right[2] in ordi-

**2.** In *Commonwealth v. Moore,* —— Mass. ——, 393 N.E.2d 904, 906 (1979), the Massachusetts Supreme Judicial Court, while skirting the matter of constitutionality, agreed with the Massachusetts district court that the venerable device was, except where security needs prevailed, an "anachronism." We suspect that most courts today, state and federal, would agree. In the unlikely event the issue of constitutionality ever again arises in a particular case, it will have to be resolved in light of all the facts in that case, not in terms of a per se rule. *See Estelle v. Williams,* 425 U.S. 501, 504, 506–08, 96 S.Ct. 1691, 1694, 48 L.Ed.2d 126 (1975).

nary circumstances not to be required, over objection, to sit in such an enclosure, the security considerations existing in the present trial sufficiently justified the requirement.

### III.

 We come finally to petitioner's claim of constitutional error in the court's failure to specifically question prospective jurors concerning possible racial bias. The court asked a general question along these lines to the venire, but went no further. Our decision in *Dukes v. Waitkevitch*, 536 F.2d 469, 470–71 (1st Cir. 1976), fully answers petitioner's claim. *See Ristaino v. Ross*, 424 U.S. 589, 96 S.Ct. 1017, 47 L.Ed.2d 258 (1976); *cf. Ham v. South Carolina*, 409 U.S. 524, 93 S.Ct. 848, 35 L.Ed.2d 46 (1973). On the facts of the present case, we can see no merit in the contention.

*Affirmed.*

DAVIS, Judge, concurring:

In this habeas corpus consideration of a state conviction, even though and because tried as far back as 1971, I cannot bring myself to accept as constitutional the challenged portions of the charge without taking some account of the strength of the evidence against appellant. In a federal habeas corpus case of this vintage (coming from a state court), this is not, for me, an application of the strict doctrine of harmless error (as applied by the District Court), but rather one of the several components showing the existence (or not) of the ultimate constitutional requirement that the defendant be tried and convicted under the standard of proof beyond a reasonable doubt. I therefore concur in the court's opinion but add that, in agreeing with the court that there was no violation of due process, I have also considered the strong evidence against appellant–as indicated, for one thing, by the District Court's determination that even if there were constitutional errors in the charge they were harmless beyond a reasonable doubt. The solidity of the evidence helps to convince me, regardless of the application of "harmless error,"

that the imperfections in the charge did not prevent Bumpus from having received a fair trial or his constitutional measure of due process.