COMMONWEALTH *vs.* ROSS M. GRACE.

Bristol.     December 1, 1975. — August 3, 1976.

Present: HENNESSEY, C.J., QUIRICO, KAPLAN, & WILKINS, JJ.

*Practice, Criminal,* New trial, Capital case.

For the reasons set forth in *Commonwealth* v. *Grace, ante,* 746 (1976), there was no abuse of discretion in the denial of the defendant's motion for a new trial. [762]

INDICTMENT found and returned in the Superior Court on October 4, 1972.

The case was tried before *Brogna,* J., and a motion for a new trial was heard by him.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Daniel F. Featherston, Jr.,* for the defendant.

*Peter B. Gay,* Special Assistant District Attorney, for the Commonwealth.

QUIRICO, J.    This case is before the court pursuant to G. L. c. 278, §§ 33A-33G, on the defendant's appeal from his conviction of murder in the second degree and the resulting sentence of imprisonment to the Massachusetts Correctional Institution at Walpole for life. The defendant was tried together with his brother Frank Grace, who was found guilty of murder in the first degree, and with two others who were found not guilty.

The defendant and his brother each filed a separate appeal, and each filed a separate but practically identical motion for a new trial. Their cases were both remitted to the Superior Court for hearing on the motions. G. L. c. 278, § 33E. The trial judge heard the motions together and denied them by a single decision containing findings and an order applicable to both cases. The defendant and his brother then each appealed from the denial of his motion, and the original and supplemental records on appeal in both cases were again entered in this court.

The defendant, as did his brother, challenges the denial of his motion for a new trial and also seeks to raise other assignments of error in the conduct of the trial. However, the lawyer who represented both the defendant and his brother in their appeals filed a single brief applying in common to both cases and which argued only the appeal from the denial of the motions for a new trial.

We hold that there was no error in the denial of the defendant's motion for a new trial, and, for the reasons which we expressed in his brother's case, *Commonwealth* v. *Grace, ante,* 746, 758 (1976), we consider all other assignments of error waived. Accordingly, we affirm.

The evidence relating to the shooting of the victim, Marvin Morgan, is amply set out in *Commonwealth* v. *Grace, ante* at 747-750. At trial, the defendant attempted to discredit the Commonwealth's witnesses and to establish, through his testimony and that of others, that he was not present at the scene of the shooting, which occurred in front of the West End Social Club at approximately 11:30 P.M.

The defendant's testimony was essentially as follows: He and his girl friend (now wife) Maria were at the home of one Francis Jones on the evening of August 8, 1972. They all watched television until sometime after eleven, when the news was coming on.[1] He and Maria then

---

[1] The news, which usually begins at 11 P.M., was delayed for nearly thirty minutes because of an interruption for a political announcement. This fact was corroborated by the television station program manager.

stopped by the home of one William Shell where they met
a Mr. and Mrs. Johnson downstairs. After speaking briefly
with the Johnsons, he started upstairs to Shell's apartment
and met Shell on the steps. This occurred at approximately
11:20 P.M. After a brief conversation with Shell, the two
men left and went to Summit Street, where the defendant
planned to stay for the night. He arrived at Summit Street
at approximately 11:25 P.M. and met another of his girl
friends, Peggy Woodward, there. He got a beer, took a
bath and then put on a bathrobe, turned on the television
and a tape recorder, and ate a sandwich. Shortly there-
after, Vern Rudolph came to the door and told the defend-
ant about an incident at the West End Social Club and
about the arrest of the defendant's brother for murder. He
also told the defendant that the police were looking for
him in connection with the shooting. The next day, the
defendant, accompanied by his attorney, turned himself
in. While prosecution witnesses had testified that the as-
sailants had "Afro" haircuts, the defendant testified that
on the date of the homicide in question his hair was closely
cropped.

On cross-examination, the defendant denied having been
the subject of a "rip off," although he admitted having
made some sort of theft report to the State police. The
Commonwealth then introduced the record of a conviction
for breaking and entering to impeach the defendant's cred-
ibility. G. L. c. 233, § 21, as appearing in St. 1950, c. 426.

Several witnesses were called to corroborate the defend-
ant's alibi testimony. Francis Jones, the brother-in-law of
Maria Grace, testified that the defendant was present at
his home until sometime after 11 P.M., at which time he
left with Maria. Frances Jones, Maria's sister, testified to
the same effect. Maria herself testified that she was with
the defendant at the Jones house until after 11 P.M., and
that she then left the defendant off at the Shell house
approximately ten minutes later.

Patricia Johnson and Alice Shell, Maria's sisters, testi-
fied that the defendant arrived at the Shell house about
11:30 P.M. The Shell house is approximately three blocks

from the West End Social Club, the scene of the shooting. Robert Johnson corroborated his wife's testimony, placing the defendant at the Shell house sometime near 11:30 P.M.

The final witness to testify and corroborate the defendant's story was Peggy Woodward. She testified that the defendant arrived at her apartment at approximately 11:30 P.M. and appeared calm and normal. She further stated that he got a beer, took a bath, changed into pajamas and watched television. Sometime between 12:30 and 1 A.M., three persons came to the apartment and told the defendant about the shooting and that his brother had been arrested. The defendant remained at Woodward's apartment all night.

1. The defendant's motion for a new trial was based on evidence which he alleged to be "newly discovered and highly relevant." The nature and content of that evidence is set out in our opinion in *Commonwealth* v. *Grace, ante* at 751-755. Essentially, the evidence was in the form of affidavits and oral testimony which (a) tended to support the alibi defense developed at the trial,[2] (b) challenged the testimony of a government witness whose identification of the defendant and his brother was allegedly prompted by the police, and (c) questioned the partiality of one juror who sat on the case. The judge found that the evidence was not "newly discovered" and was cumulative, and he stated that he was "not convinced that justice either was not, or may not have been, done at the trial." Accordingly, he denied the defendant's motion. For the reasons we have detailed extensively in *Commonwealth* v. *Grace, ante* at 751-755, there was no error in the judge's ruling.

2. Pursuant to our obligation under G. L. c. 278, § 33E, we have considered the whole case on the law and the evidence. We have done so with particular care to determine whether the evidence introduced to support the defendant's motion for a new trial indicates that justice may not

---

[2] Four alleged eyewitnesses testified that the defendant was not present at the scene.

have been done. On the basis of this review, we conclude that the jury's verdict was proper, and that neither the "new" evidence nor the conduct of the trial itself warrants our ordering a new trial or reducing the verdict to a lesser degree of guilt. See *Commonwealth* v. *DeChristoforo*, 360 Mass. 531, 543-544 (1971).

> *Order denying motion for*
> *new trial affirmed.*
> *Judgment affirmed.*