Frank GRACE et al., Petitioners,
Appellants,

v.

Fred BUTTERWORTH, etc., et al.,
Respondents, Appellees.

No. 79–1422.

United States Court of Appeals,
First Circuit.

Argued Dec. 3, 1979.

Decided Feb. 5, 1980.

On Rehearing April 7, 1980.

Decided June 27, 1980.

Opinion after Submission of Case to State
Court Dec. 31, 1980.

Daniel F. Featherston, Jr., Boston, Mass., with whom Robert A. Sherman, Boston, Mass., was on brief, for petitioners, appellants.

Robert V. Greco, Barbara A. H. Smith, Asst. Attys. Gen., Boston, Mass., with whom Francis X. Bellotti, Atty. Gen., and Stephen R. Delinsky, Asst. Atty. Gen., Chief, Crim. Bureau, Boston, Mass., were on brief, for respondents, appellees.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

COFFIN, Chief Judge.

Appellants, Frank and Ross Grace, were tried together in 1974 in Massachusetts Superior Court for the murder of Marvin Morgan. The government's case depended largely on the testimony of two eyewitnesses who identified the Graces as the victim's assailants. The appellants each proffered

an alibi defense.[1] The jury returned guilty verdicts of first degree murder for Frank Grace and second degree murder for his brother Ross, and the trial judge sentenced both to life in prison.

This appeal from the district court's denial of appellants' petitions for habeas corpus is the latest in a series of attempts to obtain relief from these convictions in both the state and federal courts. Appellants initially challenged their convictions on direct appeal to the Massachusetts Supreme Judicial Court. While that appeal was pending, they filed a motion for new trial on the basis of newly discovered evidence that they claimed would corroborate their alibis. The trial judge, concluding that the "new" evidence was available at the time of trial and was merely cumulative, denied the motions. The Supreme Judicial Court consolidated the appeals from the convictions and from the denials of the new trial motions and affirmed the trial court on both. Appellants then sought relief in the federal district court in Massachusetts pursuant to 28 U.S.C. § 2254. The district court dismissed their habeas corpus petitions on March 27, 1978, and we affirmed that order, *Grace v. Butterworth*, 586 F.2d 878 (1st Cir. 1978).

While appellants' application for habeas corpus was pending in the district court, they filed a second motion for new trial in the Supreme Judicial Court. They argued in their new motion that the trial judge had denied them due process by improperly charging the jury with respect to reasonable doubt and punishment under various degrees of murder. The court denied this motion, and on September 29, 1978, the Supreme Judicial Court affirmed, *Commonwealth v. Grace*, —— Mass. ——, 381 N.E.2d 139 (1978). Appellants subsequently filed a second petition for habeas corpus, which was also denied by the district court on July 24, 1979.

In this appeal, we are concerned solely with the appellants' challenge to the trial court's jury instructions. Appellants point to three aspects of the charge that they regard as prejudicial: the judge's discussion of the different parole consequences of convictions for first and second degree murder, the judge's definition of reasonable doubt in terms of "serious unanswered questions", and the judge's explanation of reasonable doubt by means of analogies to important decisions in ordinary life.[2]

---

1. The facts are more fully set out in the Supreme Judicial Court's opinions affirming the convictions. *Commonwealth v. Grace*, 370 Mass. 746, 352 N.E.2d 175 (1976); *Commonwealth v. Grace*, 370 Mass. 759, 352 N.E.2d 183 (1976).

2. The trial judge defined reasonable doubt as follows:

"'Beyond a reasonable doubt' does not mean that the Commonwealth has to prove a person's guilt to an absolute or mathematical certainty. There will hardly ever be a case heard by a jury that is so open and shut that there is no possibility of the person being innocent. That is not what we mean.

"What we mean, rather, is that you have to be sure, after weighing the evidence, after discussing the testimony that you have heard amongst yourselves, after determining what part, all, part or none, of any witness's story you are going to believe. After drawing the inferences that you think are reasonable from the evidence that you believe, it means that you must be sure to a moral certainty that the defendant is guilty of the crimes, as I will explain them.

"If after evaluating the evidence in your minds, if you have any serious unanswered questions about the guilt of any defendant of a crime with which he is charged, then he must be given the benefit of that doubt and acquitted."

Following this instruction, he offered the following analogy:

"Now, I said you have to be sure. What we mean is that you have to be as sure as you would want to and probably have been when in your own lives you have had an important economic or social decision that you have had to make effecting [sic] your own personal lives.

"We all know that when we have to make that kind of a decision, that we can't be absolutely sure we are doing the right thing. But unless after weighing all the pros and cons we come to the conclusion that we are morally sure we are doing the right thing, then we don't act.

"For example, in your own lives at some time or other you may have had to make a decision whether to quit school, to get a job or to go on with your education; or whether to get married or stay single; or whether to stay married or get a divorce; whether to

■ Appellants' first argument concerns a case, *Commonwealth v. Ferreira*, 373 Mass. 116, 364 N.E.2d 1264 (1977), decided by the Supreme Judicial Court after it had affirmed the appellants' conviction and the denial of their first new trial motion. In *Ferreira*, the court reversed a murder conviction and ordered a new trial because of the trial judge's jury instructions regarding reasonable doubt and probable cause, which were substantially identical to those given at appellants' trial. Appellants argue that it was constitutional error for the Supreme Judicial Court to deny their motion for new trial submitted one month after *Ferreira* was decided. Recognizing that a state court's misapplication of its own law generally does not raise a constitutional claim cognizable in a federal habeas corpus proceeding, *Beck v. Washington*, 369 U.S. 541, 554, 82 S.Ct. 955, 963, 8 L.Ed.2d 98 (1969), appellants argue that the Supreme Judicial Court's denial of a new trial was "arbitrary and capricious", thus constituting invidious discrimination proscribed by the fourteenth amendment.

Since *Ferreira* was decided after appellants' trial and conviction, their argument proceeds from the premise that the Supreme Judicial Court was obligated to apply that decision retroactively. From this starting point they argue that the court made a series of specious distinctions between the two cases that amounted to an arbitrary denial of their right to retroactive application of *Ferreira*. We need not weigh the merits of the court's attempts to distinguish the two cases, however, since we find the procedural grounds on which the Supreme Judicial Court based its decision sufficient to dispose of this issue.

■ As its first ground for affirming the trial court's denial of a new trial, the Supreme Judicial Court stated:

"We note that trial counsel took no exception to the reasonable doubt portion of the charge and that experienced appellate counsel failed to brief or argue the correctness of the charge on the first appeal. 'It has been the unbroken practice both under the statute and at common law respecting motions for new trial not to examine anew the original trial for the detection of errors which might have been raised by exceptions taken at the trial.' *Commonwealth v. McLaughlin*, 364 Mass. 211, 229, 303 N.E.2d 338, 350 (1973) . . . ." *Commonwealth v. Grace, supra* —— Mass. at ——, 381 N.E.2d at 140.

Appellants argue that the court acted arbitrarily in imposing a procedural default against them, since in *Ferreira* no exception had been taken to the instructions, yet the court exercised its discretion to consider the issue. This argument is without merit. The factors that may influence a state court to relax its procedural requirements in order to establish a principle of law for future cases do not require that court to waive those requirements when a party seeks retroactive application of a decision. In *Hankerson v. North Carolina*, 432 U.S. 233, 97 S.Ct. 2339, 53 L.Ed.2d 306 (1977), the Court faced the argument that retroactive application of *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), would impose an undue burden on the administration of state judicial systems. In rejecting this argument, Justice White noted: "The States, if they wish, may be able to insulate past convictions by enforcing the

buy a house or continue to rent; or whether to pick up and move to another location and leave your friends for the offer of a better job.

"Now, whenever you have had to make that type of a decision, you weigh the pros and cons carefully. And unless you are sure to a moral certainty that you are doing the right thing, you don't act. You don't make the change. It is that type of sureness that the law means by the expression 'beyond a reasonable doubt.' "

With respect to the differences between conviction for first and second degree murder, the judge said:

"For first degree murder, the sentence is life in prison; and that person is not eligible for parole. He stays there until and unless pardoned by the Governor and the Council.

"For second degree murder, the punishment is life in prison; and he is eligible—I don't say that he will be, but he is eligible for parole in 15 years."

normal and valid rule that failure to object to a jury instruction is a waiver of any claim of error." 432 U.S. at 244 n.8, 97 S.Ct. at 2345–2346 n.8. The Supreme Judicial Court permissibly applied state procedural law by finding such a waiver in this case.

Appellants argue further that, even if *Ferreira* had never been decided, the instructions given by the trial judge would require a new trial as a matter of federal constitutional law. The district court found a basis in federal law for rejecting each of the three elements of the charge that appellants point to as reversible error. We will consider these in turn.

With respect to appellants' assertion of error in the trial judge's mention of punishment in his jury charge, the district court noted the finding of the Supreme Judicial Court that failure both to assign this instruction as error and to brief the question on appeal constituted a procedural default under Massachusetts law and applied the rule of *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Under *Sykes*, a procedural default precludes habeas corpus review unless the petitioner can demonstrate both "prejudice" resulting from the trial court's ruling and "cause" for his failure to comply with state procedures. *Id.* at 87, 95 S.Ct. at 2506. In applying the *Sykes* test, the district judge concluded that appellants had met neither of these tests.

██ The Supreme Court did not define either of the crucial terms in *Sykes*, and this circuit has yet to put a definitive gloss on the meaning of "cause". The district court, however, relied on the definition applied by the Sixth Circuit in *Canary v. Bland*, 583 F.2d 887, 894 (6th Cir. 1978) (Merrit, J., concurring): " '[C]ause' means

either that state procedural rules are inadequate or were unfairly applied or that neither the defendant nor his attorney could reasonably have been expected to know or appreciate the legal significance of the facts upon which the objection is based." We have rejected above the assertion that the state procedural rule was improperly or unfairly applied. Appellants also argue that there was no basis in Massachusetts law for reversal on the ground of this type of jury instruction prior to *Ferreira*. While we are less sanguine than the district court that prior cases had clearly presaged the holding in *Ferreira* on this point, counsel was, as the district judge noted, aware enough of the possibility of error in this instruction to object to it at trial. We agree that appellants have failed to demonstrate sufficient cause for their failure to press this issue on appeal.[3]

██ Moreover, even if the principles of comity underlying the exhaustion requirement did not militate against exercise of the court's habeas corpus jurisdiction, section 2254 requires that a petitioner establish that he is in custody in violation of the Constitution or laws of the United States. Here, appellants are unable to cite any federal authority for their assertion that mention of punishment in a jury instruction violates the Constitution. *Taylor v. Kentucky*, 436 U.S. 478, 98 S.Ct. 1930, 56 L.Ed.2d 468 (1978), on which appellants rely as creating a constitutional principle that introduction of *any* "extraneous considerations" into the jury's deliberations constitutes a denial of due process, concerned the introduction of facts not adduced at trial that might dilute the defendant's presumption of innocence. We do not believe that

---

3. We note that the *Sykes* Court, in creating a stricter standard than the Court had applied in *Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), did not explicitly overrule that case. 433 U.S. at 88 n.12, 97 S.Ct. at 2507. *Sykes* involved failure to object at trial, while *Fay* concerned alleged errors that had been preserved by objection at trial but had not been raised on appeal. The circuits have split over whether the *Fay* "knowing-and-deliberate-waiver" rule is still applicable to objections taken at trial but not pressed on appeal. *Compare Evans v. Maggio*, 557 F.2d 430 (5th Cir. 1977), *with Ferguson v. Boyd*, 566 F.2d 873 (4th Cir. 1977). Since appellants have not argued that *Fay* applies to this issue and have addressed only the *Sykes* "cause and prejudice" test and since we find an alternative ground for affirming the district court on this point, we do not take sides in the controversy over the continuing vitality of *Fay*.

the judge's mention of parole consequences had a similar detrimental impact here.

In response to appellants' second objection to the jury instruction—that the trial judge's use of analogies in defining reasonable doubt denied them due process—the district court assumed that the claim survived the *Sykes* test, but held that it failed to raise an error of constitutional magnitude. In *Dunn v. Perrin*, 570 F.2d 21, 24 (1st Cir. 1978), we noted that "comparison of reasonable doubt in criminal cases with the standard employed by jurors to make even the most significant decisions in their daily lives has been criticized for its tendency to trivialize the constitutionally required burden of proof". *See Scurry v. United States*, 120 U.S.App.D.C. 374, 376, 347 F.2d 468, 470 (D.C. Cir. 1965) (equating reasonable doubt with important personal decisions "den[ies] the defendant the benefit of a reasonable doubt"). The instruction in *Dunn*, however, like the charge in this case, also included reference to "refraining from action (as opposed to something like 'to be willing to act')", which, we noted, "has received widespread approval among the circuits." 570 F.2d at 25. *See, e. g., United States v. Robinson*, 546 F.2d 309, 313 (9th Cir. 1976); *United States v. Leaphart*, 513 F.2d 747, 750 (10th Cir. 1975); *United States v. Richardson*, 504 F.2d 357, 361 (5th Cir. 1974). We held that the combined effect of these two instructions was not a deprivation of the defendant's due process right to a reasonable doubt instruction.

 Appellants argue that the "important decisions" analogies employed in the instruction in this case were more egregious than the mere mention of decisions pertaining to "the affairs of life" in *Dunn*. Although we reiterate our concern that use of the type of analogies invoked by the trial judge to help explain the reasonable doubt standard may in fact understate the degree of certainty required for a criminal conviction, we do not believe that because the judge explicitly stated the ordinary-life analogies that were merely implicit in *Dunn* this aspect of the charge had a significantly more detrimental impact on appellants' rights. We do not exercise supervisory power over the state courts of Massachusetts; our review of their criminal proceedings is limited to those instances in which "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process". *Cupp v. Naughten*, 414 U.S. 141, 147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973). Because we find the jury charge as a whole to have been essentially sound, we do not believe that this explanation had a sufficiently devastating impact on the trial to amount to a denial of due process.[4]

Finally, with respect to appellants' assertion that the trial court impermissibly shifted the burden of proof, the district court held that they had failed to satisfy the exhaustion requirements of subsections 2254(b) & (c) because the issue had never been presented to the Massachusetts courts for decision.[5] Appellants argue that a habeas petitioner is not required to exhaust his avenues of state review if his return to state court would be a futile exercise. We agree that an attempt to secure a new trial in state court on this issue would be futile; the Massachusetts courts would certainly apply their contemporaneous objection rule to bar consideration of the issue. *See Commonwealth v. Grace, supra*, —— Mass. at ——, 381 N.E.2d at 140. The rule of *Wainwright v. Sykes, supra*, would then preclude habeas corpus review of this question, since appellants have offered no "cause" for their failure to object to this aspect of the charge at trial.

---

4. Since we agree with the district court's conclusion on the merits of this claim, we do not decide whether the lack of any state court precedent constitutes sufficient "cause" for a defendant's failure to object to a charge that is later held to be reversible error in a retroactively applicable decision. *See Frazier v. Weatherholtz*, 572 F.2d 994 (4th Cir. 1978).

5. Indeed, appellants did not object to this portion of the judge's instructions at trial, nor did they raise the issue on direct appeal or in either of their motions for new trial or the appeals therefrom.

Although the district court did not address the merits of this claim, we see no error in this portion of the trial court's instructions. In *Dunn v. Perrin, supra,* which appellants cite as striking down a similar instruction, the trial judge had defined reasonable doubt as "such a strong and abiding conviction as still remains after careful consideration of all facts and arguments." 570 F.2d at 23–24. We noted that this instruction imposed on the defendant the burden of establishing doubt in the jurors' minds. *Id.* at 24. In this case, in contrast, the trial judge said:

"If after evaluating the evidence in your minds, if you have any serious unanswered questions about the guilt of any defendant of a crime with which he is charged, then he must be given the benefit of the doubt and acquitted."

This instruction is vastly different from that in *Dunn,* which in effect equated reasonable doubt with a "strong and abiding conviction". Here the judge's explanation did not refer to the function of defendants' evidence and, when viewed in light of the entire charge, did not imply that they had the burden of establishing that degree of doubt the judge was attempting to define. *See Tsoumas v. New Hampshire,* 611 F.2d 412 (1st Cir. 1980).

*Affirmed.*

## ON PETITION FOR REHEARING

LEVIN H. CAMPBELL, Circuit Judge.

This case comes before us following our allowance of appellants' petition for rehearing. *See* Fed.R.App.P. 40. On February 5, 1980, we affirmed the district court's denial of Frank and Ross Grace's petitions for habeas corpus. Thereafter we granted this rehearing so as to consider the Graces' contention that a recent decision of the Massachusetts Supreme Judicial Court (SJC), entered after we had initially heard oral argument, "fundamentally eliminates several of this court's grounds for affirmance . . ."[1]

To explain the nature of appellants' argument and the supposed bearing of the state court's intervening decision on our own prior disposition of these habeas petitions, we shall briefly restate the procedural underpinnings of this case. In doing so we borrow heavily from our earlier opinion.

The Grace brothers stood trial together in 1974 in Massachusetts Superior Court for the murder of Marvin Morgan. The jury returned verdicts of guilty of first degree murder for Frank and second degree murder for Ross; the trial judge sentenced both to life imprisonment.

The Graces challenged their convictions on direct appeal to the Supreme Judicial Court, and with that appeal pending, also filed motions requesting a new trial on the basis of alleged newly discovered evidence. The trial judge denied the new trial motions, and the Supreme Judicial Court consolidated the appeals from the convictions and those denials, ultimately affirming both. *Commonwealth v. Grace,* 370 Mass. 746, 352 N.E.2d 175 (1976); *Commonwealth v. Grace,* 370 Mass. 759, 352 N.E.2d 183 (1976). Appellants then shifted their focus to the federal district court for Massachusetts, requesting relief under 28 U.S.C. § 2254. That court dismissed the Graces' habeas petitions on March 27, 1978, and we affirmed. *Grace v. Butterworth,* 586 F.2d 878 (1st Cir. 1978).

On July 22, 1977, while the Graces' first habeas petitions were still pending before the district court, the SJC decided the case of *Commonwealth v. Ferreira,* 373 Mass. 116, 364 N.E.2d 1264 (1977). That case reversed a defendant's conviction for murder and ordered a new trial on the grounds that the trial judge had improperly informed the jury of the possible parole and sentencing consequences flowing from verdicts of first and second degree murder, and had further erroneously instructed the jury on the concept of proof beyond a reasonable doubt. This decision was, no doubt, of great inter-

---

1. Our memorandum and order of February 26, 1980 granting the petition for rehearing limited argument "to the question whether, it light of the decision in *Commonwealth v. Garcia,* the Massachusetts Supreme Judicial Court's failure to apply its decision in *Commonwealth v. Ferreira* retroactively and grant petitioners a new trial was arbitrary and capricious.

est to the Graces, as the same trial judge had presided over their trial and there had given instructions "substantially identical"[2] to those found deficient by the SJC in *Ferreira*. The Graces had not, in the various previous challenges to their convictions, voiced any arguments based on those portions of the jury charge. One month after the *Ferreira* decision, however, they moved for a new trial basically contending that the similarity between the charges, the state of the evidence and the overall circumstances existing in their case and in *Ferreira* mandated the granting of such relief. The trial judge denied this second new trial motion without hearing; that denial was affirmed by the SJC which distinguished the two cases on several grounds.[3] *Commonwealth v. Grace*, —— Mass. ——, 381 N.E.2d 139 (1978). The Graces next petitioned the SJC for rehearing, contending that the court's proffered distinctions were specious and that the failure to grant them a new trial on a record "so similar" to that in *Ferreira* constituted a denial of due process. This petition was denied without opinion.

At this point, the Graces again looked to the federal courts for relief, filing the present section 2254 petition. This petition was denied by the district court, and, as previously pointed out, we affirmed that denial in an opinion entered February 5, 1980. On the question of the SJC's supposed "arbitrary and capricious" denial of the second new trial motion, we concluded that

"We need not weigh the merits of [that] court's attempts to distinguish [*Ferreira* and *Grace*] . . . since we find the procedural grounds on which the Supreme Judicial Court based its decision [*i. e.*, the failure of the Graces to except to the reasonable doubt instruction or to argue the deficiency of the jury charge on appeal] sufficient to dispose of this issue." At 4.[4] Although we recognized that in *Ferreira* too no exception had been taken to the challenged instructions, we held this not to be dispositive, noting that the "factors that may influence a state court to relax its procedural requirements in order to establish a principle of law for future cases do not require that court to waive those requirements when a party seeks retroactive application of a decision." Slip op. at 4.

The foundation for that conclusion, however, was severely eroded if not totally undermined by a further decision of the SJC delivered on January 8, 1980 and brought to our attention in the Graces' present petition for rehearing. In *Commonwealth v. Garcia*, —— Mass. ——, 399 N.E.2d 460 (1980), the SJC was again confronted with a challenge to a jury instruction on reasonable doubt delivered in a murder trial by the same trial judge who had sat on both *Ferreira* and *Grace*. The *Garcia* court noted that "There can be little question that the charge given in this case was very similar to that given in *Ferreira*." 399 N.E.2d at 471. The court, as a preliminary matter, agreed to

2. *Grace v. Butterworth*, 635 F.2d 1 at 4 (1st Cir. 1980). The Commonwealth in its brief to the Supreme Judicial Court urging affirmance of the trial court's denial of the Graces' second motion for a new trial, *see infra*, described the relationship of the two charges as follows: "In fact, this same trial judge used *substantially the same charge* not only in *Grace* and *Ferreira*, but also in . . . numerous other murder trials over which he presided." (Emphasis added.)

3. The SJC noted that the Graces' "trial counsel took no exception to the reasonable doubt portion of the charge and that experienced appellate counsel failed to brief or argue the correctness of the charge on the first appeal"; that the judge's reasonable doubt instruction, "unlike the charge in *Ferreira*, emphasized 'moral certainty' " and "taken in the context of the entire

charge did not amount to reversible error"; and that the Graces' failure to argue on appeal their trial exception to the judge's mention of parole and sentencing consequences worked a waiver of that claim of error.

4. We further found that appellants failed to demonstrate sufficient cause for their failure to press the parole and sentencing consequences issue on appeal; that the trial judge's mention of such consequences did not, in any event, violate due process; that the trial judge's definition of reasonable doubt did not so "infect[]" the entire trial" as to violate due process; and that the trial judge had not, in his instructions, impermissibly shifted the burden of proof. None of these issues were reopened for argument in our granting of the Graces' petition for rehearing.

overlook the failure of Garcia's counsel to object and except to the disputed portion of the charge, indicating that it did not "require that defense counsel foresee developments in the case law . . . ." *Id.* (Garcia's trial had taken place some seven years prior to the *Ferreira* decision.) Next, the court concluded that "the charge in this case, like that in *Ferreira* . . . is a constitutionally inadequate definition of 'beyond a reasonable doubt.'" 399 N.E.2d at 472. Further, and most important to the present discussion, the SJC held that the United States Supreme Court decisions in *In re Winship*, 397 U.S. 358, 980 S.Ct. 1068, 25 L.Ed.2d 368 (1970), and *Ivan V. v. New York*, 407 U.S. 203, 92 S.Ct. 1951, 32 L.Ed.2d 659 (1972), mandated the retroactive application of *Ferreira*; this was so despite Garcia's failure to raise the alleged errors at trial.[5] *Compare Hankerson v. North Carolina*, 432 U.S. 233, 244 n.8, 97 S.Ct. 2339, 2346, 53 L.Ed.2d 306 (1977). The SJC's only reference to its seemingly inconsistent handling of *Grace* was that it had not found the judge's instruction there, "in the context of the entire charge . . . to constitute reversible error," and that "*Grace* was an appeal from the denial of a motion for new trial," while Garcia involved additionally "a direct appeal." 399 N.E.2d at 472.

The Graces presently argue that our February 5, 1980 opinion finding no infirmity in the SJC's failure to grant them the benefits of its *Ferreira* ruling, based as it was on our recognition of that court's right in the circumstances to withhold retroactive application of that ruling, has lost all strength in light of *Garcia*. The Graces further contend that the retroactive application by the SJC of its *Ferreira* holding to *Garcia* following its steadfast refusal to similarly apply that holding to their case is "arbitrary and capricious," and thus violative of the fourteenth amendment. We have allowed the Graces the opportunity to brief and argue this last point on rehearing.

At the outset we are presented with a critical threshold question, namely whether the Graces have sufficiently exhausted their available state judicial remedies so as to render it appropriate for this court, in light of considerations of federal-state comity, to now answer their allegations of unconstitutional behavior on the part of the state's highest court. *Picard v. Connor*, 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); 28 U.S.C. §§ 2254(b), (c).

We are mindful that in this circuit at least "exhaustion refers to remedies, not petitioners," *Odsen v. Moore*, 445 F.2d 806, 807 (1st Cir. 1971), and that a reading of the summary presented above of the Graces' repeated attempts to secure relief in the state courts may make it first appear that the appellants have adequately presented their contentions to the necessary state tribunals. However, under the Supreme Court's decision in *Picard v. Connor*, 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971), "exhaustion of state remedies is required as a prerequisite to consideration of *each* claim sought to be presented in federal habeas . . . ." *Pitchess v. Davis*, 421 U.S. 482, 487, 95 S.Ct. 1748, 1752, 44 L.Ed.2d 317 (1975) (per curiam) (emphasis added). It is not enough that the state had been presented with the general factual background of a petitioner's case or legal contentions related to that presently urged. Rather, the state prisoner is required to first present to the state courts the "*same* claim" that he urges upon the federal court before he may properly seek relief in that latter forum. *Picard, supra*, 404 U.S. at 276, 92 S.Ct. at 512 (emphasis added). Here, while the claim presently pressed by the Graces is certainly intertwined with and closely echoes their earlier voiced contention, we think that it "took on an entirely different character" after the *Garcia* decision and now "is in effect a new claim." *Subilosky v. Commonwealth of Massachusetts*, 412 F.2d 691, 693 (1st Cir. 1969).

---

**5.** The Supreme Judicial Court continued by concluding that in light of the "overwhelming evidence" of Garcia's guilt, the erroneous instructions were harmless beyond a reasonable doubt. 399 N.E.2d at 473.

In their original habeas petition in the present proceeding the Graces had urged that their case was identical in nearly all respects to *Ferreira* and that the state courts could not arbitrarily withhold the benefits of that decision from them. At this stage the relevant comparison concerned only those two cases, and as explained above, we had no difficulty in finding adequate the SJC's reliance on a procedural default as a basis for its decision to deny the Graces their requested relief. With the entry of the SJC's opinion in *Garcia*, however, granting as it did retroactive application of *Ferreira* despite defendants' failure to object at trial, the Graces' contention took on a rather different dimension. The focal point of their fourteenth amendment claim of arbitrary state court action now shifted from a comparison of their treatment with that accorded *Ferreira* to an urging that the state had, in a less than even-handed manner, granted the retroactive benefits of its law to one party while capriciously withholding it from another. The relevant comparison is no longer solely between the Graces and Ferreira; it now also includes those brothers and Garcia.

While it is true that the SJC made passing reference to its handling of the *Grace* case in its *Garcia* opinion, *see supra*, it can hardly be contended that the state has been given " 'the initial "opportunity to pass upon and correct" [the instant] alleged violation[ ] of its prisoners' federal rights.' " *Picard, supra,* 404 U.S. at 275, 92 S.Ct. at 512 (*quoting Wilwording v. Swenson,* 404 U.S. 249, 250, 92 S.Ct. 407, 408, 30 L.Ed.2d 418 (1971)). Never has the state court been asked by the Graces to amplify its *Garcia* opinion or to contrast that case with the Graces' own situation. The petitioners have thus, in our view, framed a new constitutional challenge not yet presented to or addressed by the state courts.

We believe that the usual reluctance of a federal court to scrutinize and possibly "upset a state court conviction without [granting] an opportunity to the state courts to correct [the alleged] constitutional violation," *Picard, supra,* 404 U.S. at 275, 92 S.Ct. at 512 (*quoting Darr v. Burford,* 339 U.S. 200, 204, 70 S.Ct. 587, 590, 94 L.Ed. 761 (1950), *overruled on other grounds, Fay v. Noia,* 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963)), is heightened in the present circumstances. The petitioning parties here are not simply framing a traditional habeas claim that their trial was tainted by error of constitutional magnitude; instead they are accusing the highest court in the state of acting unconstitutionally itself in an apparently knowing refusal to apply precedent with an even hand. In the face of this argument, never yet raised in this case before any state tribunal, we believe that usual notions of comity and the recognized "proper respect for state functions," *Preiser v. Rodriguez,* 411 U.S. 475, 491, 93 S.Ct. 1827, 1837, 36 L.Ed.2d 439 (1973), requires that we yield to the state in the first instance. The questions of the retroactivity of the *Ferreira* holding and the general impact and scope of the *Garcia* decision are of obvious great concern to the state. The Supreme Judicial Court should be granted an opportunity to explain more fully, if it so desires, the intended effect of *Garcia* and the nature and significance of the distinctions it perceives between that decision and the present case, before a federal court presumes to do so. We feel it appropriate and indeed necessary that the "substance of [this] federal habeas corpus claim . . . first be presented to the state courts." *Picard, supra,* 404 U.S. at 278, 92 S.Ct. at 513.

We would generally, after finding a failure to exhaust state remedies, simply affirm the district court's dismissal of the section 2254 petition forcing the petitioners to completely begin their quest for relief anew. *See, e. g., St. Pierre v. Helgemoe,* 545 F.2d 1306 (1st Cir. 1976). We feel, however, that a different course is called for here. Considering the close relationship between the instant claim and that previously raised in their initial petition, and the fact that this case presents to this court a purely "legal" question divorced from any possible contested factual allegations, we believe that in the interest of fairness and expeditious disposition the better course is

for us to retain jurisdiction while the Graces put their claim before the state courts. *Cf. West v. Louisiana*, 478 F.2d 1026, 1034 (5th Cir. 1973), *vacated on other grounds*, 510 F.2d 363 (1975). Since the Graces' claim hinges on the interpretation of a decision of the highest court of Massachusetts, we assume that efforts will be made to present the claim directly to that court through procedures deemed to be suitable under the circumstances. The parties are directed to cooperate to present the matter forthwith and to keep this court advised as to their progress.

*So ordered.*

### Opinion After Submission of Case to State Court

PER CURIAM.

In our initial opinion upon rehearing of June 27, 1980, we refrained from deciding whether, as petitioners claimed, the Massachusetts Supreme Judicial Court had been so "arbitrary and capricious" in its application of state precedent in this case as to violate the fourteenth amendment. Instead, while retaining appellate jurisdiction, we directed petitioners to put their claim before the state courts so that they might be given the opportunity to rule in the first instance on the issues presented.

In an opinion dated November 12, 1980, the Supreme Judicial Court, considering the Graces' petition for reconsideration of that court's 1978 decision, affirmed the denial of defendants' motion for a new trial. *Commonwealth v. Grace*, Mass.Adv.Sh. (1980) 2345, —— Mass. ——, —— N.E.2d ——. The court held that, at least in the procedural context in which petitioners' challenges to the jury instructions were made, reversal was essentially discretionary and dependent upon such factors as:

"the weight of the evidence, the seriousness of the deficiencies in the instructions taken as a whole, the extent to which the defects had been disclosed in opinions of this court or of the Supreme Court before the instructions were given, the prior opportunities of defense counsel to make the challenge on appeal and in postconviction proceedings, and whether the appeal is subject to the special duty imposed on us by [Mass.G.L. c. 278] § 33E [governing direct appeals but not defendants' motions for new trial]." Mass.Adv.Sh. (1980) at 2360, at ——, —— N.E.2d ——.

Verdicts would be set aside only upon a showing of grave prejudice or substantial likelihood that a miscarriage of justice had occurred. Applying this standard, the court explained and adhered to its prior holding, and altogether rejected the Graces' most recent constitutional claim as affording any ground for relief.

On November 17, 1980, we invited the parties to file such supplemental memoranda, if any, as they wished in light of the recent opinion and order of the Supreme Judicial Court. After consideration of petitioners' memorandum and the Supreme Judicial Court's opinion, we conclude that petitioners have failed to demonstrate that the state court's disposition of the present case was such as to violate the standards of the fourteenth amendment. Even assuming, which we do not decide, that the judgments of the highest court of a state may ever be declared unconstitutional by a lower federal court on the ground that has been advanced, we do not see that the disposition of the instant case, as explained by the Supreme Judicial Court, even approaches the irrationality or unfairness that would be required to sustain appellants' contention. We therefore adhere to our affirmance of the district court's denial of appellants' petitions for habeas corpus.

*Affirmed.*